**IOWA FARMERS PURCHASING ASSOCIATION, INC. and Ronald Carter, Appellees,**

v.

**William H. HUFF, III, Commissioner of Insurance of the State of Iowa, and Insurance Department of the State of Iowa, Appellants.**

No. 2-59433.

Supreme Court of Iowa.

Dec. 21, 1977.

Richard C. Turner, Atty. Gen., William F. Raisch and John R. Perkins, Asst. Attys. Gen., for appellants.

Virgil Moore, Des Moines, for appellees.

Heard by MOORE, C. J., MASON, RAWLINGS, REYNOLDSON, and HARRIS, JJ.

RAWLINGS, Justice.

Defendants appeal from declaratory judgment holding discount privileges sold by plaintiff corporation to qualifying farmers alone did not come within the ambit of Chapter 503, The Code 1975. We reverse.

Basically essential to an understanding of the instant controversy are two statutory enactments.

First, § 503.4 provides, in relevant part:

"No association contemplated by this chapter shall issue any membership until it shall have procured from the commissioner of insurance a certificate of authority authorizing it to engage in such business."

Next, § 503.2 states:

"The term 'association' when used in this chapter shall mean any person, firm, company, partnership, association, or corporation other than building and loan associations, insurance companies and associations, and corporations and co-operative associations subject to the provisions of chapters 497, 498 and 501, which sell, offer for sale or issue *to the public generally* memberships or certificates of membership entitling the holder thereof to purchase merchandise, materials, equipment or services on a discount or cost-plus basis.

"The term 'issue' when used in this chapter shall mean issue, sell, place, engage in or otherwise dispose of or handle.

"The term 'membership' when used in this chapter shall mean certificates, memberships, shares, bonds, contracts, stocks, or agreements of any kind or character issued upon any plan offered *generally to the public* entitling the holder thereof to purchase merchandise, materials, equipment or service, either from the issuer or someone designated by the issuer, either under a franchise or otherwise, whether it be at a discount, cost plus a percentage, cost plus a fixed amount, at a fixed price, or on any other basis." (emphasis supplied).

Absent a Code § 503.4 certificate plaintiff, Iowa Farmers Purchasing Association, Inc., a corporation (Association), provides its members the opportunity to purchase merchandise at a reduced price. By corporate "policy" alone, membership is restricted to those persons who farm at least 80 acres. Noticeably, no exceptions or exclusions specified in Code § 503.3 are here applicable.

The present action was apparently triggered by this letter sent to plaintiff Association by the Securities Division of defendant, Iowa Insurance Department (State):

"It has recently come to the attention of this division that your corporation has been soliciting for the sale of memberships for a fee which allows the members to purchase merchandise at a discount. Please be advised that these membership sales appear to be a violation of Chapter 503, Code of Iowa, (1975), Membership Sales, unless and until a certificate of authority is issued to your corporation by the Commissioner of Insurance of the State of Iowa.

\* \* \* \* \* \*

"\* \* \* Please be aware that further solicitations of memberships without regard to the requirements of Chapter 503 will necessitate action by this division. Guide yourself accordingly."

The Association's ensuing petition for declaratory judgment and temporary and permanent injunction alleged, in essence, chapter 503 does not apply to its operations

because of the aforesaid membership limitation.

The State controverted all basic allegations of the petition and affirmatively asserted inappropriateness of declaratory relief.

Trial court granted a temporary injunction and hearing on the merits followed. The only Association witness called was its president, Donal Backman. He testified at length concerning the Association's "policy" of offering memberships to only those who operated farms at least 80 acres in size, the investigation effected as to applications received, and issuance of memberships to qualified applicants. However, no evidence was presented which established that every membership actually sold had been issued to a "policy" qualifying farmer. In fact, Backman admitted some Association members may not even be farmers.

These are the issues here presented:

(1) Did trial court err in granting declaratory relief upon a matter subject to a criminal prosecution?

(2) Is the Association exempt or excepted from the provisions of chapter 503 because of a policy limiting memberships to certain farmers?

(3) Did trial court have before it sufficient evidence on which to hold the Association did not offer or sell memberships to the public generally?

■ I. Parenthetically, by way of exclusion, the constitutionality of chapter 503 was initially challenged by plaintiffs, but they did not further address that issue in trial court. Furthermore, when the court below specifically excluded consideration of the constitutional question, plaintiffs never moved for enlargement or amendment of the findings and conclusions. Therefore, any consideration by us as to the constitutionality of chapter 503 is precluded. See *Arnold v. Lang*, Iowa, 259 N.W.2d 749 (1977).

■ II. The first question posed is whether declaratory relief is appropriate where, as here, the Association's operations were subject to possible criminal proceedings. See Code § 503.13. Plaintiffs take the affirmative, defendants the negative.

At the outset, *Ostrander v. Linn*, 237 Iowa 694, 22 N.W.2d 223 (1946), relied upon by plaintiffs, is to us factually distinguishable from the case at hand. There declaratory relief was held to be ordinarily inappropriate when another action involving the same parties and subject matter is pending in another court of competent jurisdiction and a full adjudication of respective rights may be had. This court then fashioned an exception to such rule where complicated legal questions involving police power are presented to a justice of the peace in a petty criminal proceeding. This proviso was foundationed upon the theory that since a higher court was better able to resolve complex jural controversies it could, in the exercise of sound discretion, entertain a declaratory judgment action and thus resolve the involved intricate issues.

Here such exception does not come into play due to the fact no other proceeding, criminal or otherwise, was pending when these plaintiffs commenced their declaratory judgment action.

Rather we have at hand an action for declaratory relief initiated in the face of a possible criminal prosecution. Although it would appear the problem before us has not been previously presented to or resolved by this tribunal, the majority of courts in other jurisdictions have determined that in such situations declaratory proceedings may stand.

As stated by the editor, 10 A.L.R.3d at 733:

"While there were intimations and even holdings in the earlier cases that declaratory relief, like equitable relief generally, was inappropriate where the administration of the criminal law was involved, it now seems reasonably well settled that in an otherwise proper case declaratory relief may be granted notwithstanding the fact that the declaration is as to the validity or construction of a statute having criminal or penal provisions, and it seems clear, under the mod-

ern practice in most courts, that declaratory relief will not be denied merely because the petitioner, by violating the statute or ordinance in question, could have the issue of his guilt tried out in a criminal prosecution."

See also 2 Anderson, Actions for Declaratory Judgment, § 624 (2d ed. 1951); 22 Am. Jur.2d, Declaratory Judgments, § 24; 26 C.J.S. Declaratory Judgments § 33.

In light of the fact defendants have not shown any sound, concrete reason for denying declaratory relief in this case, merits of the controversy will be considered.

III. We now focus upon Association's practice of limiting membership sales to persons farming at least 80 acres.

It is at once evident the so-called restrictive membership "policy" is nothing more than a mutable and self-serving plan or scheme, devoid of any commercial substance.

It can be indiscriminately ignored, violated, or discarded altogether by the Association as its financial interests may dictate. Although its commercial enterprise appears presently limited to agricultural equipment, machinery, etc., no conceivable *business* reason discourages membership sales to nonfarmers. In other words, the obvious purpose of Association's phantasmic plan is to avoid registration mandates of chapter 503.

There is no occasion for us to here pass upon the merits of plaintiffs' business. The determinative question is whether Association's so-called "policy" excepts it from regulation under chapter 503.

IV. In this regard we look again to § 503.2, quoted above, not heretofore examined by this court.

■ At the outset, none of the various specific exemptions set forth in chapter 503 are presently applicable. And where certain exceptions are enumerated, it is presumed the legislature intended no others be created. Cf. *In re Estate of Wilson*, 202 N.W.2d 41, 44 (Iowa 1972); *Richardson v. City of Jefferson*, 257 Iowa 709, 715, 134 N.W.2d 528, 532 (1965). See also 2A Suth-

erland, Statutory Construction, § 47.11 (rev. 3d ed. 1973). Therefore, plaintiffs' burden to show chapter 503 does not reach them is a heavy one.

Noticeably, the statute regulates sale of association memberships to "the public generally" or "generally to the public". Grammatically interpreted according to approved usage, the adverb "generally" modifies offer, issue and sell, not public. See *Zilske v. Albers*, 238 Iowa 1050, 1059, 29 N.W.2d 189, 194 (1947); *Haugen v. Drainage District*, 231 Iowa 288, 313, 1 N.W.2d 242, 255 (1941); Code § 4.1(2). See also 2A Sutherland, § 47.33; 73 Am.Jur.2d, Statutes, § 230; 82 C.J.S. Statutes § 334. Two conclusions result.

First, in determining whether a particular organization or individual transacts business with the public we disregard specific instances and concentrate on the overall picture. See Webster's Third New International Dictionary, "generally", at 945 (1961). Thus, contrary to the State's assertions, isolated transactions with nonfarmers would be immaterial to our inquiry. The Association has shown it usually if not always dealt with farmers.

■ Second and more important, the term "public" must be deemed to stand alone in § 503.2. Therefore, as opposed to "general public", the "public" can mean any group or segment, however characterized, of the aggregate of the citizens of a political entity. See *Webster*, "general", at 944 and "public", at 1836; Black's Law Dictionary, "general", at 812 and "public" at 1393 (rev. 4th ed. 1968).

■ So construed, Iowa farmers constitute an identifiable but unexceptional segment of the public just as do mechanics, nurses, secretaries, housewives, etc. Consequently, the involved dealings with farmers are transactions with the public.

Such a literal interpretation is supported by federal case law interpreting the private offering exemption of the Securities Act of 1933, § 4(2), which exempts from registration requirements those "transactions * * not involving any public offering." 15

U.S.C., § 77d(2). Because issuance of memberships by a discount purchasing agency is comparable to securities transactions, the analogy is helpful. Cf. *Securities and Exchange Com'n. v. W. J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); *Securities & Exchange Com'n. v. Glenn W. Turner Ent., Inc.*, 474 F.2d 476 (9th Cir. 1973).

The leading case is *Securities and Exchange Com'n. v. Ralston Purina Co.*, 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494 (1953). The Court there rejected Ralston's argument to the effect issuance of shares to its "key employees" was not a public offering, and in so doing said at 346 U.S. 123–125, 73 S.Ct. 984:

> " ' * * * manifestly, an offering of securities to all redheaded men, to all residents of Chicago or San Francisco, to all existing stockholders of the General Motors Corporation or the American Telephone & Telegraph Company, is no less "public", in 'every realistic sense of the word, than an unrestricted offering to the world at large. Such an offering, though not open to everyone who may choose to apply, is none the less "public" in character, for the means used to select the particular individuals to whom the offering is to be made bear no sensible relation to the purposes for which the selection is made. * * * To determine the distinction between "public" and "private" in any particular context, it is essential to examine the circumstances under which the distinction is sought to be established and to consider the purposes sought to be achieved by such distinction.'
>
> " * * *
>
> "The design of the statute is to protect investors by promoting full disclosure of information thought necessary to informed investment decisions. The natural way to interpret the private offering exemption is in light of the statutory purpose. Since exempt transactions are those as to which 'there is no practical need for * * * [the bill's] application,' the applicability of [§ 4(2)] should turn on whether the particular class of persons affected need the protection of the Act. An offering to those who are shown to be able to fend for themselves is a transaction 'not involving any public offering.' "

See also *Parvin v. Davis Oil Company*, 524 F.2d 112, 118 (9th Cir. 1975); *S. E. C. v. Dolnick*, 501 F.2d 1279, 1282 (7th Cir. 1974); *Bowers v. Columbia General Corporation*, 336 F.Supp. 609, 623–624 (D.Del.1971).

Similarly, farmers have as much need for the protection flowing from chapter 503 as does any other segment of the populace. And there is presently no showing that farmers have any special expertise, not shared by urban dwellers, which enables them to "fend for themselves" in dealing with persons or organizations such as plaintiff Association. *Ralston Purina*, 346 U.S. at 125, 73 S.Ct. at 984.

We now hold plaintiff Association's activities are subject to the provisions of chapter 503. Trial court erred in holding to the contrary.

Costs are taxed to plaintiff, Iowa Farmers Purchasing Association, Inc.

REVERSED.