Elaine BROWN, Appellant,

v.

PUBLIC EMPLOYMENT RELATIONS BOARD, Appellee.

SIOUX CITY EDUCATION ASSOCIATION, Appellee and Cross-Appellant,

v.

PUBLIC EMPLOYMENT RELATIONS BOARD, Appellee.

No. 83–68.

Supreme Court of Iowa.

Feb. 15, 1984.

P.L. Nymann, of Gaul, Nymann & Green, Sioux City, for appellant.

Charles E. Gribble, of Sayre & Gribble, P.C., Des Moines, for appellee and cross-appellant.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, SCHULTZ, and WOLLE, JJ.

WOLLE, Justice.

At the threshold of this public employment case is the question whether the complainant Elaine Brown filed her prohibited practice complaint against the Sioux City Education Association (association) within the time required by statute. Iowa Code section 20.11 provides that proceedings alleging a violation of section 20.10 ("Prohibited practices") "shall be commenced by filing a complaint with the board within ninety days of the alleged violation ...." That clear and unambiguous statute is mandatory and not directory only; it specifically limits the time within which proceedings charging a prohibited practice shall be commenced. The association raised the timeliness issue before the agency, the district court, and here by its cross-appeal. Unfortunately the Public Employment Relations Board (PER Board) did not expressly answer the question of timeliness, nor did it make the required findings of fact and conclusions of law on that issue. The PER Board instead proceeded directly to the merits of Brown's complaint and held that the association had breached its duty of fair representation and thereby committed a prohibited practice. That decision was reversed as a result of judicial review proceedings because the district court concluded that there was not substantial evidence in the record as a whole to support Brown's complaint.

A reasoned decision on the timeliness issue was a prerequisite for entry of a final decision on the merits of the complaint. In its absence the administrative record is not yet adequate for judicial review. We therefore do not address the merits of the prohibited practice charge. Rather, we must remand the case to the PER Board with directions to make findings of fact and file a reasoned opinion on the timeliness issue in accordance with section 17A.16(1) of the Iowa Administrative Procedure Act. From the somewhat convoluted procedural history and factual background of this case, we need summarize only those events which are pertinent to our decision. We address first the relevant undisputed background facts, then the procedural steps which brought the case to this court, and finally the legal principles on which our decision rests.

### I. Background Facts.

Elaine Brown has been teaching in the Sioux City public school system since 1974.

During all of that time the association has been the collective bargaining organization representing Brown and other employees of the Sioux City Community School District (district). A collective bargaining agreement (master agreement) entered into between the association and the district contained language determining the seniority of teachers employed by the district.

As early as 1978, a dispute arose as to whether Brown or another teacher, one Harlan Fedderson, had greater seniority under the master agreement. Fedderson began teaching in the district after Brown, but Brown signed a continuing contract three months after Fedderson. Termination notices were served on Fedderson and four other teachers, triggering grievance proceedings under the master agreement. Brown intervened in those proceedings, but the grievances were subsequently resolved when the district voluntary withdrew the termination notices.

With student enrollment in the district declining and further termination notices expected, the district and the association then reviewed the master agreement seniority language in an effort to prevent future controversies. In the spring of 1979 the association's executive committee, of which Brown was a member, received a recommendation from the association's seniority committee that each teacher's seniority date from the signing of a continuing contract, a change which would elevate Fedderson above Brown on the seniority list. In the fall of 1979, Brown resigned from the association because of the position it decided to take on that issue. Subsequent negotiations between the association and district concluded with the adoption of an amendment of the master agreement changing the basis on which teachers' seniority would be determined. That midterm modification of the master agreement language by the district and the association is at the heart of complaints which Brown subsequently filed with the PER Board. Article 19 of the agreement had formerly defined seniority as "the number of consecutive years of employment in the school district," but under the substituted language of the midterm modification agreement seniority was measured "from the date of the employee's signing of a continuing contract which initiated uninterrupted service." Brown herself later testified,

I think that is the root of the problem, the changing of Article 19, yes. And the way it was changed.

Association and district representatives signed the midterm modification agreement on February 22 and 25, 1980, the agreement was ratified by association members, and a copy of the agreement was posted on school bulletin boards in the district. Thereafter, the district closed the school where Brown and Fedderson were teaching. When Fedderson was given a position at another school for which both Brown and he had applied, Brown asked the association to process a grievance against the district on her behalf. That grievance was processed through the pre-arbitration steps of the contract but was processed no further because the association concluded that Fedderson was clearly senior to Brown under the language agreed to in February.

II. *Procedural History.*

A. *The Complaints.* Brown filed complaints against both the association and the district. Under Iowa Code section 20.11 (1979), such complaints need not comply with technical rules of pleading. Although the association has contended that the complaint against it was insufficient, we find otherwise. Brown's complaint against the association, filed July 29, 1980, alleged in essence that the association had not fairly represented her on two occasions and thereby twice committed prohibited practices: first, in agreeing with the district to modify the seniority language; and second, in refusing to process her grievance. Brown's complaint against the district, filed on August 22, 1980, and later amended, alleged in essence that the district had discriminated against her by entering into the midterm modification and by thereafter implementing the agreement by assigning

Fedderson to the teaching position she had requested.

B. *Proceedings Before the Hearing Officer.* Both charged parties steadfastly raised the issue of timeliness throughout all subsequent stages of the proceedings. Initially the case was assigned to a hearing officer who denied motions to dismiss on the basis that

> the facts alleged, when viewed in the light most favorable to the complainant, could, if proven, bring the complaint within the jurisdictional time lines.

Thereafter the hearing officer received evidence and included in his recommended decision and order detailed findings of fact, conclusions of law, and rulings on renewed motions to dismiss. He recommended that the complaint against the district be dismissed because it was not timely filed. Turning to the complaint against the association, the hearing officer concluded that it was timely filed because one of the allegations was that the association had not processed Brown's May 7 grievance to binding arbitration and that had occurred within ninety days from the filing of the complaint. On the merits, however, the hearing officer recommended that the complaint be dismissed because the evidence supported neither the claim of unfair representation arising from the midterm modification of seniority language nor the claim with respect to the association's later handling of Brown's grievance.

C. *Proceedings Before the PER Board.* On Brown's appeal from those recommended decisions, the PER Board first adopted and affirmed the fact findings of the hearing officer. Next it affirmed the hearing officer's finding that the complaint against the district was not timely filed, but it made no reasoned decision on whether Brown's complaint against the association was also time barred. Addressing the complaint against the association on its merits, the PER Board disagreed in part with the hearing officer's recommendation. It agreed that the association was not required to take Brown's grievance to arbitration because that grievance was without

merit under the modified contract language. On the charge based on the midterm modification agreement, however, the PER Board reached a different conclusion than the hearing officer. It held that

> the association committed a prohibited practice by its treatment of Brown in advocating and seeking a change in the computation of seniority that adversely affected only her, a change which the association knew would have such an adverse affect.

D. *Judicial Review Proceedings.* Both Brown and the association filed petitions for judicial review of the PER Board decision and the cases were consolidated for hearing before the district court. Brown contended that her complaint against the district had been timely, but that decision of the PER Board was affirmed by the district court. On the association's petition for judicial review, the district court reversed, finding in a detailed written analysis of the evidence and applicable law that the PER Board finding of a prohibited practice was not supported by substantial evidence in the light of the record as a whole. With respect to timeliness of Brown's complaint, the court said:

> Since the court finds that the agency action is not supported by substantial evidence, it will be sufficient to note that it is the conclusion of the court that the association's contentions with respect to the adequacy and timeliness of the prohibited practice complaint are without merit.

Brown has not appealed the dismissal of her complaint against the district, so the district is not a party to this appeal. Brown has appealed the district court's ruling that the evidence does not support her complaint against the association. By its cross appeal the association continues to insist that Brown's complaint against it was not timely.

III. *Determining Timeliness of the Complaint Against the Association.*

■ A. *Scope of Review.* Our review under Iowa Code section 17A.20 is

limited to determining whether the district court correctly applied the law in exercising its judicial review function under section 17A.19(8). In order to make that determination, we apply the section 17A.19(8) standards to the agency action to determine whether our conclusions are the same as those of the district judge. *Jackson County Public Hospital v. PERB*, 280 N.W.2d 426, 429–30 (Iowa 1979). Like the district court, we will set aside an agency decision when we "cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes...." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456, 467–68 (1951), *quoted in Mount Pleasant Community School District v. PERB*, 343 N.W.2d 472, 477 (Iowa 1984), *and City of Davenport v. PERB*, 264 N.W.2d 307, 312 (Iowa 1978).

■ B. *The Need for a Reasoned Agency Decision.* On the timeliness issue we are not yet able to perform our judicial review function. The PER Board did not disclose the findings of fact and principles of law on which it appears to have concluded that Brown's complaint against the association was not time barred. Although we might infer from its decision for Brown on the merits of the complaint that the PER Board found the complaint had been timely filed, the parties, the district court, and we are entitled to a reasoned opinion on that issue. Iowa Code section 17A.16 (1979) provided in pertinent part:

A proposed or final decision shall include findings of fact and conclusions of law, separately stated.... Each conclusion of law shall be supported by cited authority or by a reasoned opinion.

We have consistently required such findings as a necessary prerequisite to judicial review. *Johnston v. Iowa Real Estate Commission*, 344 N.W.2d 236, 238 (Iowa 1984); *Catalfo v. Firestone Tire & Rubber Co.*, 213 N.W.2d 506, 509–10 (Iowa 1973). The reasons for such a statutory requirement are concisely stated in 2 K. Davis, *Administrative Law Treatise* § 16.05 (1958):

The practical reasons for requiring administrative findings are so powerful that the requirement has been imposed with remarkable uniformity by virtually all federal and state courts, irrespective of a statutory requirement. The reasons have to do with facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction.

To facilitate the further proceedings which will follow our remand of this case to the PER Board, we first will emphasize that section 20.11 is mandatory and the complainant Brown has the burden to establish that she has satisfied that jurisdictional requirement. We will then identify some of the specific factual and legal questions which have yet to be answered by the PER Board.

■ C. *The Statutory Ninety-Day Limit is Mandatory.* We have not previously decided the precise issue of timeliness under Iowa Code section 20.11 that is presented by the association's cross appeal. In a case arising under a very similar statute, however, we have clearly held that this type of statute limiting the time for filing a complaint with an administrative agency is mandatory and not merely directory. In *Iowa Civil Rights Commission v. Massey-Ferguson, Inc.*, 207 N.W.2d 5 (Iowa 1973), we construed Iowa Code section 105A.9(15) (1966) which provided:

Any complaint filed under this chapter shall be so filed within ninety days after the alleged discriminatory or unfair practice occurred.

We there affirmed dismissal of a complaint which was based on events that had occurred more than ninety days before the complaint was filed, characterizing the statutory language as

a clear and unambiguous statute specifically limiting the number of days within which the complaint *shall* be filed.

207 N.W.2d at 7 (emphasis in original). We also there noted that statutes often regulate the time within which administrative proceedings may be brought.

An administrative agency may not enlarge its powers by waiving a time requirement which is jurisdictional or a prerequisite to the action taken.

*Id.* at 10.

The PER Board itself has recognized and cited the *Massey-Ferguson* case as authoritative in applying Iowa Code section 20.11. In *City of Davenport*, PERB Case No. 981 (1977), the Board dismissed a complaint as untimely, stating:

The record is clear that the act complained of occurred on November 29, 1976, yet the complaint was not filed until March 21, 1977. As we have noted in earlier decisions, the statute and rules of limitations are jurisdictional in nature. . . .

Inasmuch as the hearing officer was without jurisdiction to entertain this complaint then we are likewise lacking jurisdiction.

*Id.* at 4 (citations of authority omitted).

The PER Board's own administrative rule complementing Iowa Code section 20.11 is as plain on its face as the statute:

A complaint shall be deemed untimely and shall be dismissed if filed with the director more than 90 days following the alleged violation.

Iowa Admin.Code Rule 660–3.1 (1981).

Because the PER Board has in earlier decisions correctly recognized that section 20.11 is both mandatory and jurisdictional in nature, it shall on remand first determine whether Brown filed her complaint within ninety days of the actual occurrence of the prohibited practice. If she did not, the PER Board shall then decide whether Brown has established a sound factual and legal basis for being excepted from the requirement that the complaint be filed ninety days from the occurrence of the prohibited practice.

■ D. *Burden of Proof.* The complainant Brown must bear the burden of proof on the timeliness issue which is jurisdictional in nature. *See City of Davenport*, PERB Case No. 981, at 4 (1977); *Kurt Kluesner*, PERB Case No. 1022, at 2 (1977). As with the statutory notice requirement in Iowa Code section 613A.5 (1983) (tort liability of governmental subdivisions), the proof of timeliness of filing is a part of the claimant's case. *See Franks v. Kohl*, 286 N.W.2d 663, 665 (Iowa 1979); *Lattimer v. Frese*, 246 N.W.2d 255, 257 (Iowa 1976).

To the extent that Brown attempts to establish a factual and legal basis for being excused from timely filing, she likewise must shoulder the burden to establish the exception. We have consistently held that the party relying on exceptional circumstances to avoid a statute of limitations must bear the burden of proving the facts which the exception requires. *See, e.g., Jacobson v. Union Story Trust & Savings Bank*, 338 N.W.2d 161, 164 (Iowa 1983); *Franzen v. Deere & Co.*, 334 N.W.2d 730, 732 (Iowa 1983).

IV. *Issues to be Decided on Remand.*

■ A. *When Did the Prohibited Practice Occur?* Upon remand the PER Board must first decide when the ninety days commenced to run on Brown's prohibited practice charge. The hearing officer initially found Brown's complaint timely because Brown had alleged that the association mishandled her grievance in May of 1980 and the complaint was filed on July 29, 1980. That basis for a prohibited practice is no longer viable, however, because Brown did not appeal from the board's determination that the association was not required to take Brown's grievance to arbitration. Consequently, the PER Board on remand must decide when the midterm modification agreement effected a change in Brown's seniority status, because that is the date from which the ninety day time limit ordinarily would run.

In a recent case involving a teacher's employment status under a collective bargaining agreement, we held that the time within which the grievance must be filed

dated from the time the teacher's status became that of a probationary employee rather than from the time that status resulted in her termination. In *Ferree v. Board of Education of the Benton Community School District,* 338 N.W.2d 870 (Iowa 1983), a collective bargaining agreement required that grievances be presented within five working days of the event giving rise to the grievance. A teacher was placed on probationary status more than five days before filing a grievance, but her grievance was filed within five days after the district commenced termination proceedings against her. Like Brown, she argued that the violation occurred when her changed status directly affected her, not when her status was changed. We disagreed, holding that the grievance was not timely.

> The notice of November 1980 significantly changed her status relative to staff reduction by placing her in step 2(2) of the staff reduction agreement. Ferree knew, or should have known because she was a party to the contract, that being on probation made her employment position significantly less secure *at that time.* The potential consequence of the status on her employment was explicitly stated on two evaluations. Thus, under the grievance procedure, she could have contested the probation within the time provided by the master contract. Her obligation to file a timely grievance arose then, not when the later proceedings were commenced.

*Id.* at 872. Consistent with our holding in *Ferree,* the PER Board must first decide when Brown's seniority status was changed. The time for her to file a prohibited practice complaint against the association would ordinarily run from the date her status changed rather than from the date when her changed seniority resulted in her being denied a teaching position.

■ Brown has argued that the association's maintenance of the revised seniority list and later use of that list constitute a continuing violation which she could challenge within ninety days of any later use of that list to deny her a position. Sound legal precedent undermines that argument. Brown urged that same continuing violation theory in support of her complaint against the district in this case, but that theory was properly rejected by the hearing examiner, the PER Board and the district court. The hearing officer appropriately relied upon a leading federal case construing the similar federal statutory time limit on filing federal unfair labor practice charges: *Local Lodge No. 1424 v. NLRB,* 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960) (construing 29 U.S.C. § 160(b)). In *Local Lodge* the Court rejected a similar continuing-violation argument, holding that unfair labor practices occurring outside the limitations period cannot be revived by later conduct which simply implements the earlier practice. The Court said:

> [T]he use of the earlier unfair labor practice is not merely "evidentiary," since it does not simply lay bare a putative current unfair labor practice. Rather, it serves to cloak with illegality that which was otherwise lawful. And where a complaint based upon that earlier event is time barred to permit the event itself to be so used in effect results in reviving a legally defunct unfair labor practice.

362 U.S. at 417, 80 S.Ct. at 827, 4 L.Ed.2d at 838. The PER Board and district court properly relied on the *Local Lodge* reasoning in rejecting Brown's attempt to apply a continuing violation theory against the district; the PER Board should also have rejected her attempt to use that theory against the association.

B. *Circumstances Excusing Late Filing.* If the PER Board decides that the association changed Brown's seniority status more than ninety days before her complaint was filed, it must then decide whether she has proved facts supporting either of the two legal theories on which she attempts to excuse late filing of the complaint. Legal support for both theories is found in Iowa and federal case law.

(1) *The Discovery Exception.*

■ Brown contends that the ninety day period of section 20.11 did not begin to run

until the date when she first knew or should have known of the acts which constituted a prohibited practice. We have recognized such a discovery-rule exception to the running of other statutes of limitation in several recent cases. *See, e.g., Franzen v. Deere & Co.*, 334 N.W.2d at 732 (discovery rule applicable to claims based on strict liability in tort); *Brown v. Ellison*, 304 N.W.2d 197, 200–01 (Iowa 1981) (discovery rule applicable to cases arising from express and implied warranties; application to other Iowa statutes of limitation catalogues). Federal decisions construing the statutory time limit for filing unfair labor practices also recognize this discovery-rule exception. *See, e.g., N.L.R.B. v. Allied Products Corporation*, 548 F.2d 644, 650 (6th Cir.1977) (six months limitation period does not begin to run until unlawful activity "has become known to the charging party"); *Wisconsin River Valley District Council v. N.L.R.B.*, 532 F.2d 47, 53 (7th Cir.1976) (statute "does not begin to run until the aggrieved party knew or should have known that his statutory rights were violated"). Under this exception Brown's complaint will therefore be considered timely if she establishes factually that she neither knew nor reasonably should have known until after April 28, 1980 that her seniority status had been changed by the midterm modification agreement.

(2) *The Misrepresentation Exception.*

Brown also contends that her time for filing of the complaint should be extended because the association misled her into thinking that she could not file a prohibited practice complaint until she had sustained actual damages. She testified that the association's executive secretary "had told me very clearly you can do nothing until you suffer damages."

■ Iowa cases recognize that statutes of limitation are tolled if the claim is fraudulently concealed from the plaintiff. *Matter of Estate of Graham*, 295 N.W.2d 414, 419 (Iowa 1980); *Gruener v. City of Cedar Falls*, 189 N.W.2d 577, 580–81 (Iowa 1971);

*Pride v. Peterson*, 173 N.W.2d 549, 555 (Iowa 1970). Iowa Code section 20.11 is subject to the same exception. Consequently, Brown's complaint will be deemed timely if she proves that the association fraudulently concealed her cause of action until after April 28, 1980, notwithstanding her due diligence to discover the facts on which she based her complaint.

We realize that our remand of this case to the PER Board will further delay its final disposition. While expediency tempts us to predict how the administrative agency will decide the remanded issues and either agree or disagree at this time, we choose the wiser course of deference to agency decision making, followed by limited judicial review. In his administrative law treatise, Kenneth Culp Davis aptly states:

> The amount of litigation involved with adequacy of administrative findings is tremendous. On first impression, most of the cases remanded for a better statement of findings seem to involve a great deal of wasted energy and needless expense. Of course, the first impression is correct to the extent that the system would be more efficient if the agencies would only give a little more careful attention to the form and content of their findings. But litigation about findings is not limited to mechanics about recitations of the right words. A very large portion of the cases remanded for better findings are an inevitable result of the system of a limited judicial review. When the court's view of law or policy differs from that of the agency, the agency's findings often fail to answer the questions the court deems crucial, and the only proper disposition the court can make of the case is a remand to the agency so that the needed answers can be supplied.

2 K. Davis *Administrative Law Treatise* § 16.01, at 436 (1958).

The district court should have remanded this case to the PER Board for the entry of findings of fact, conclusions of law, and a reasoned decision on the timeliness issue.

We therefore vacate the district court's decision and remand the case to the PER Board with instructions to enter a decision on the timeliness issues in accordance with the principles set forth herein.

DECISION OF THE DISTRICT COURT VACATED; REMANDED WITH DIRECTIONS.