Robert J. KOPPES and Susan J. Koppes, Appellants,

v.

James A. PEARSON, Appellee.

No. 85–761.

Supreme Court of Iowa.

March 19, 1986.

George A. LaMarca and Gregory W. Landry of Williams, LaMarca, Marcucci, Wiggins & Anderson, P.C., Des Moines, for appellants.

Robert M. Bertsch and Stephen C. Krumpe of O'Connor & Thomas, P.C., Dubuque, for appellee.

WOLLE, Justice.

Plaintiffs Robert J. Koppes and Susan J. Koppes brought this action to recover damages allegedly caused by defendant's negligent performance of back surgery on Susan. The surgery was performed on August 1, 1975, but the action was not commenced until January 10, 1985. Plaintiffs have attempted to avoid the effect of Iowa's statute of limitations directed at medical malpractice claims by contending (1) that the statute is unconstitutional and (2) that fraudulent concealment tolled the running of the limitation period. The district court granted defendant's motion for judgment on the pleadings, finding the special limitations statute constitutional and unaffected by the plaintiffs' claim of fraudulent concealment. We agree that the statute passes constitutional muster, but we reverse and remand because fraudulent concealment of the cause of action by the defendant would toll the period during which plaintiffs may commence their action.

The pleaded facts pertinent to the defendant's limitations defense were essentially uncontroverted, and therefore defendant's motion for judgment on the pleadings was an appropriate vehicle for presenting the legal issues we here address. Iowa R.Civ.P. 222; *see Lamantia v. Sojka*, 298 N.W.2d 245, 248 (Iowa 1980). Plaintiffs allege that defendant negligently failed to remove all of a herniated disc from Susan's back during surgery, causing personal injury damages. Plaintiffs also allege affirmatively that defendant "fraudulently concealed the fact that he had not excised the lumbar discs ... as represented to plaintiffs," and "because of the fraudulent concealment of the defendant it was not until on or about February 2, 1983 [that Susan] discovered that she had suffered injury." Defendant's answer raised as an affirmative defense the bar of Iowa Code section 614.1(9) (1983) which in pertinent part provided:

Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared:

. . . .

9. *Malpractice.* Those founded on injuries to the person or wrongful death against any physician and surgeon ... arising out of patient care, within two years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of, the injury or death for which damages are sought in the action, whichever of the dates occurs first, *but in no event shall any action be brought more than six years after the date on which occurred the act or omission or occurrence alleged in the action to have been the cause of the injury or death unless a foreign object unintentionally left in the body caused the injury or death.*
(Emphasis added.)

The district court found the statute constitutional and rejected the suggestion that fraudulent concealment of the cause of ac-

tion by the defendant might toll the statute. We address first the plaintiffs' equal protection and due process challenges to the constitutionality of the statute, then the issues generated by plaintiffs' allegations of fraud.

### I. *Constitutionality of Section 614.-1(9).*

■ A. *Equal protection.* Plaintiffs ask us to strike down the medical malpractice statute as both facially and in their specific case violative of the equal protection clauses of the federal and Iowa Constitutions. U.S. Const.amend. XIV; Iowa Const.art. I, § 6. They first urge us to apply a strict scrutiny test on the theory that the statute deprives them of a fundamental right of reasonable access to court. We apply instead the traditional rational basis test for the reasons articulated in *Argenta v. City of Newton*, 382 N.W.2d 457 (Iowa 1986) and *Rudolph v. Iowa Methodist Medical Center*, 293 N.W.2d 550, 557 (Iowa 1980). Statutes of limitation do not implicate or affect fundamental rights. *See Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628, 1635–36 (1945); *Fitz v. Dolyak*, 712 F.2d 330, 332 (8th Cir.1983) ("As the majority of courts have held, legislation regulating medical malpractice litigation involves neither a suspect classification, nor a fundamental right so the strict scrutiny standard is inappropriate."); *Conner v. Fettkther*, 294 N.W.2d 61, 62 (Iowa 1980) ("Statutes of limitations go to matters of remedy which are not fundamental rights.").

■ Plaintiffs challenge two classifications resulting from section 614.1(9): the differing treatment accorded health care providers and other tortfeasors; and the distinction the statute draws between patients who belatedly find a foreign object in their body, yet are not subject to the statute's final limitation, and other patients whose right to sue is severed after six years. If those classifications bear some

reasonable relationship to a legitimate public purpose, however, the statute will withstand our rational basis scrutiny. Plaintiffs have the heavy burden of negating every reasonable basis upon which the statute may be sustained. *Argenta*, 382 N.W.2d at 461. Pertinent here is our explanation of the rational basis test in *Bishop v. Eastern Allamakee Community School District*, 346 N.W.2d 500 (Iowa 1984):

> Under the rational basis test, a legislative classification is upheld if any conceivable state of facts reasonably justify it. Additionally, the guarantee of equal protection does not exact uniformity of procedure. The legislature may classify litigants and adopt certain procedures for one class and different procedures for other classes, so long as the classification is reasonable. All that is required is that similarly situated litigants be treated equally.

*Id.* at 505 (citations omitted).

■ The limitations statute here challenged was part of a package of legislation enacted in 1975. *See* 1975 Iowa Acts ch. 239, § 26. The legislation was prefaced with the statement, "a critical situation exists because of the high cost and impending unavailability of medical malpractice insurance." *Id.* § 1. The legislature undertook a comprehensive study of this problem. *See Malpractice Insurance Study Committee, Report to Sixty-Sixth Iowa Gen. Assembly* (Jan.1976).

■ We conclude that the deferential treatment accorded health care providers was reasonably related to the legislature's goal of reducing malpractice premiums. *See Rudolph*, 293 N.W.2d at 558–59. Other courts have upheld similar classifications created by statutes enacted in response to what legislators perceived to be a malpractice insurance crisis. *See, e.g., DiAntonio v. Northampton-Accomack Memorial Hospital*, 628 F.2d 287, 291–92 (4th Cir. 1980); *Woods v. Holy Cross Hospital*, 591 F.2d 1164, 1172–75 (5th Cir.1979); *Lacy v.*

*Green,* 428 A.2d 1171, 1177–78 (Del.Super. Ct.1981); *Beatty v. Akron City Hospital,* 67 Ohio St.2d 483, 491–97, 424 N.E.2d 586, 591–95 (1981); and *State ex rel. Strykowski v. Wilkie,* 81 Wis.2d 491, 506–12, 261 N.W.2d 434, 441–44 (1978).

■ We also find fairly debatable, and thus rational, the line drawn between patients who belatedly find foreign objects in their bodies and patients asserting other claims of medical malpractice. A traditional purpose of statutes of limitation is to prevent stale actions from arising after a considerable lapse of time, when the parties may encounter severe proof problems. The legislature could reasonably have determined that foreign object cases should be kept alive after other malpractice claims have expired on the theory that the presence or absence of foreign objects left in the body may readily be verified despite the passage of time and do not present such difficult problems of proof. *Fitz,* 712 F.2d at 333; *See Ross v. Kansas City General Hospital & Medical Center,* 608 S.W.2d 397, 399 (Mo.1980); *Saultz v. Funk,* 64 Ohio App.2d 29, 39, 410 N.E.2d 1275, 1282 (1979).

Our equal protection analysis and conclusion in this case are the same under the Iowa and United States Constitutions. Inapposite are cases decided by other courts that apply a heightened scrutiny under state constitutions, or whose constitutional provisions have different wording than ours. *See, e.g., Kenyon v. Hammer,* 142 Ariz. 69, 79–83, 688 P.2d 961, 971–75 (1984) (construing provision for open courts in Arizona Constitution and holding right to pursue action constituted a "fundamental" right); *Carson v. Maurer,* 120 N.H. 924, 424 A.2d 825 (1980) (applying a heightened scrutiny not required under the U.S. Constitution). Iowa Code section 614.1(9) does not violate equal protection provisions of the United States and Iowa Constitutions.

B. *Due process.* Plaintiffs assert that the medical malpractice statute of limita-

tions denies them due process of law under the Iowa and United States Constitutions. We ordinarily consider the Iowa and federal due process provisions to be "identical in scope, import, and purpose." *Shearer v. Perry Community School District,* 236 N.W.2d 688, 691–92 (Iowa 1975); *see Argenta,* 382 N.W.2d at 461.

Iowa Code section 614.1(9) has already withstood a due process challenge in federal court. *Fitz,* 712 F.2d at 333. Other courts have repeatedly declared that statutes of limitations serving a valid public purpose do not deprive litigants of due process. *See, e.g., Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 437, 102 S.Ct. 1148, 1158–59, 71 L.Ed.2d 265, 279 (1982); *Reese v. Rankin Fite Memorial Hospital,* 403 So.2d 158, 160–62 (Ala.1981); *Reyes v. Kent General Hospital, Inc.,* 487 A.2d 1142, 1146 (Del.1984); *Saultz,* 64 Ohio App.2d at 39, 410 N.E.2d at 1281.

The plaintiffs' due process challenge is without merit because it does not overcome the strong presumption of constitutionality we accord duly enacted statutes.

II. *Fraudulent Concealment.*

■ Plaintiffs allege that defendant fraudulently concealed from them his knowledge that he had negligently failed to excise all of the lumbar disc material which he should have removed from Susan's body during surgery. Plaintiffs use this allegation of fraud as ammunition for two separate attacks on defendant's statute of limitations defense. They first contend that the statutory limitation applicable to their fraud claim is found not in Iowa Code section 614.1(9), but rather in a combination of sections 614.1(4) and 614.4 (1983). Section 614.1(4) provides a five-year limitation for "relief on the ground of fraud," and section 614.4 provides that a fraud action is not deemed to have accrued until the fraud has been discovered by the aggrieved party. Plaintiffs' second attack on the limitations defense is based on the common law theory of fraudulent concealment which has long been recognized in our cases.

A. *Do sections 614.1(4) and 614.4 apply?* Our court has narrowly construed the word "fraud" in sections 614.1(4) and 614.4. We have refused to apply those statutes of limitation to actions for money damages; their use has been limited to fraud actions brought in equity which call for equitable relief. *See Pride v. Peterson,* 173 N.W.2d 549, 554 (Iowa 1970); *Higbee v. Walsh,* 229 Iowa 408, 421, 294 N.W. 597, 604–05 (1940); *District Township of Boomer v. French,* 40 Iowa 601, 602 (1875). These cases, and the many they cite, are based on the sound principle that the appropriate statute of limitations for an action is ascertained by looking beyond labels to "the actual nature of the action." *Sandbulte v. Farm Bureau Mutual Insurance Co.,* 343 N.W.2d 457, 462 (Iowa 1984); *Clark v. Figge,* 181 N.W.2d 211, 213 (Iowa 1970). We agree with defendant that the plaintiffs' action here is founded on negligence of the defendant medical provider, not on his fraud which at most deprived plaintiffs of knowledge necessary to commence their action within the time permitted by the appropriate medical malpractice statute of limitations. To quote our court's *District Township of Boomer* case from 1875:

> The cause of action does not grow out of the fraud alleged; it existed independent of the fraud.

40 Iowa at 602.

The district court correctly selected Iowa Code section 614.1(9) as the special statute of limitations governing the plaintiffs' action for damages.

B. *The common law doctrine of fraudulent concealment.* The cases which discuss and narrowly construe our statutes of limitations governing fraud have also recognized and given far-reaching effect to the common law doctrine of fraudulent concealment. *Pride,* 173 N.W.2d at 555; *Higbee,* 229 Iowa at 421–22, 294 N.W. at 605; *District Township of Boomer,* 40 Iowa at 602–04. In the *District Township of Boomer* case, our court cited numerous cases from the English common law tradition supporting the sound rule it adopted:

> [W]here the party against whom a cause of action existed in favor of another, by fraud or actual fraudulent concealment prevented such other from obtaining knowledge thereof, the statute would only commence to run from the time the right of action was discovered, or might, by the use of diligence, have been discovered.

40 Iowa at 603. That principle, steeped in the common law tradition, is alive and well in Iowa today. *See In re Estate of Thompson,* 346 N.W.2d 5, 7 (Iowa 1984); *Brown v. Public Employment Relations Board,* 345 N.W.2d 88, 96 (Iowa 1984); *Kurtz v. Trepp,* 375 N.W.2d 280, 282–83 (Iowa Ct. App.1985).

The person relying on fraudulent concealment to avoid a statute of limitations ordinarily has the burden to prove that the defendant affirmatively concealed the facts on which the plaintiff would predicate its cause of action. *See Brown,* 345 N.W.2d at 96. Our cases also recognize, however, that the requirement of affirmative acts of concealment may be relaxed where a confidential or fiduciary relationship exists between the person concealing the cause of action and the aggrieved party. *Pride,* 173 N.W.2d at 555; *Cole v. Hartford Accident & Indemnity Co.,* 242 Iowa 416, 426–27, 46 N.W.2d 811, 817 (1951). The close relationship of trust and confidence between patient and physician gives rise to duties of disclosure which may obviate the need for a patient to prove an affirmative act of concealment. *See Schnebly v. Baker,* 217 N.W.2d 708, 721 (Iowa 1974). If fraudulent concealment is established, the statute of limitations does not commence to run until the plaintiff discovers, or in the exercise of reasonable care should discover, the basis for the cause of action. *Id.; Gruener v. City of Cedar Falls,* 189 N.W.2d 577, 580 (Iowa 1971) (limitations statute would be tolled until patient "learns of the wrong or of facts placing him on inquiry").

The plaintiffs' petition adequately raised the issue of fraudulent concealment. The question remains whether we should recog-

nize fraudulent concealment as an exception to the special medical malpractice statute when its language appears at first blush to tolerate no exceptions:

> [I]n no event shall any action be brought more than six years after the date on which occurred the act or omission or occurrence alleged in the action to have been the cause of the injury or death unless a foreign object unintentionally left in the body caused the injury or death.

Iowa Code § 614.1(9).

For several reasons we conclude that this statute of limitations is subject to our venerable fraudulent concealment exception.

Legislative history clearly suggests that section 614.1(9) was enacted in 1975 in direct response to our decision one year earlier in *Baines v. Blenderman*, 223 N.W.2d 199, 201 (Iowa 1974), which applied the discovery rule in a medical malpractice case and extended its reach to the situation where a patient knew of an injury but did not know a physician had negligently caused it. *See Farnum v. G.D. Searle & Co.*, 339 N.W.2d 392, 395 (Iowa 1983) ("It is obvious subsection (9) was added to restrict the discovery rule under section 614.-1(2)...."). The discovery rule and the doctrine of fraudulent concealment are separate and distinct exceptions to the application of statutes of limitation. *See Brown*, 345 N.W.2d at 96; *Schnebly*, 217 N.W.2d at 721–22. The *Baines v. Blenderman* holding, which section 614.1(9) modified, concerned only the discovery rule; fraudulent concealment was neither raised nor discussed in that case. *Baines*, 223 N.W.2d at 200–03.

The grammatical structure of section 614.1(9) supports our construction of its meaning. The "in no event" clause refers only to the immediately preceding language which narrowed the *Baines* discovery rule. The referenced language adopted and defined a modified discovery rule—claims not involving foreign objects left in the body are deemed to accrue when the injury or death is discovered or reasonably should be discovered. The purpose of the "in no event" clause was to close the door after six years on belatedly-discovered claims of that type. Claims fraudulently concealed from the patient were not targeted by that clause. *See Kohrt v. Yetter*, 344 N.W.2d 245, 247–48 (Iowa 1984) (applying to this statute the rule of statutory construction that an exception ordinarily modifies only the immediately preceding language).

In construing statutes we presume that the legislature intended just and reasonable results, and we look to the consequences of each proposed construction. Iowa Code §§ 4.4(3), 4.6(5) (1983). We think it inconceivable that the Iowa legislature intended section 614.1(9) to bar malpractice actions against providers of medical care who by fraudulent concealment of the facts have themselves caused the delayed filing which the statute was designed to prevent. The legislature certainly did not intend such a harsh and unreasonable result. *See Borderlon v. Peck*, 661 S.W.2d 907, 908–09 (Tex.1983) (special malpractice statute of limitations did not eliminate fraudulent concealment exception; "a party will not be permitted to avail himself of the protection of a limitations statute when by his own fraud he has prevented the other party from seeking redress within the period of limitations"); Comment, *An Analysis of State Legislative Responses to the Medical Malpractice Crisis*, 1975 Duke L.J. 1417, 1434–35 ("A statute of limitations should not be structured in such a way that it might be used to perpetrate a fraud.... The heavy burden which a plaintiff must carry to prove fraud is a sufficient limitation on actions of this type."). *But cf. Bowlin Horn v. Citizens Hospital*, 425 So.2d 1065, 1070–72 (Ala. 1982) (fraudulent concealment does not toll running of special four-year medical malpractice statute of limitations because of the clear purpose and language of the statute).

Courts do not favor repeals by implication; we presume the legislature has not intended to modify long-established principles unless it has done so expressly or by

unmistakeable implication. *See Wilson v. Iowa City*, 165 N.W.2d 813, 822 (Iowa 1969); *Ritter v. Dagel*, 261 Iowa 870, 879, 156 N.W.2d 318, 323 (1968). Neither the wording of section 614.1(9) nor its legislative history suggest that it not only modified the *Baines* discovery rule but also abrogated the fraudulent concealment exception in medical malpractice cases.

Our holding—that the doctrine of fraudulent concealment survived adoption of section 614.1(9)—was forecast by the legislative counsel for the Iowa Medical Society in an article written and published shortly after its enactment. *West, Iowa Medical Liability Legislation—A Summary of House File 803*, 65 Iowa Med. Soc'y J. 493, 496–97 (1975). Explaining the effect of the new medical malpractice statute of limitation, he wrote:

> The doctrine of "fraudulent concealment" is applicable [to Iowa Code section 614.1(9)]. The statute of limitations will not start to run if the fact of the injury is known to the defendant and he conceals it from the injured party. Further, a physician owes his patient a fiduciary duty, therefore, he has a duty to disclose the injury—suppression or concealment of the fact of the injury may constitute fraudulent concealment which would prevent the statute from running.

(Citations omitted.)

The district court correctly upheld the constitutionality of Iowa Code section 614.1(9) (1983), but it should not have entered judgment on the pleadings for defendant. Plaintiffs adequately pleaded fraudulent concealment which, if proved, may overcome defendant's statute of limitations defense. On remand, plaintiffs will have the burden to prove all elements of fraudulent concealment. We intimate no view on the merits of that or any other issue of fact which must initially be decided in the district court.

REVERSED AND REMANDED.

All Justices concur except REYNOLDSON, C.J., and LARSON, J., who concur in part and dissent in part, and SCHULTZ, UHLENHOPP, and McGIVERIN, JJ., who dissent, and LAVORATO, J., who takes no part.

REYNOLDSON, Chief Justice (concurring in part, dissenting in part).

I concur in division II of the majority opinion but dissent from division I, thus adhering to my views expressed in *Rudolph v. Iowa Methodist Medical Center*, 293 N.W.2d 550, 561 (Iowa 1980) (Reynoldson, C.J., dissenting), that special legislation of this type is unconstitutional.

LARSON, J., joins this concurrence in part and dissent in part.

SCHULTZ, Justice (dissenting).

I agree that the six-year limitation period under Iowa Code section 614.1(9) applies to the discovery rule. I disagree, however, that section 614.1(9) does not apply to fraudulent concealment claims. I believe the six-year limitation period applies equally to the doctrine of fraudulent concealment as well as the discovery rule.

Initially, we do not resort to rules of statutory construction when the terms of the statute are plain and unambiguous. *Willis v. City of Des Moines*, 357 N.W.2d 567, 570 (Iowa 1984). Likewise, when the meaning is clear, courts are not permitted to search for meaning beyond the express terms. *State v. Sullivan*, 326 N.W.2d 361, 363 (Iowa 1982). Section 614.1(9) states that "in *no event shall any action* be brought more than six years after the date on which" the act or omission occurred "unless a foreign object unintentionally left in the body caused the injury or death." (Emphasis added.) The majority's interpretation that "any action" applies to the discovery rule but not to fraudulent concealment claims is a strained and unnecessary construction of section 614.1(9).

Furthermore, even if statutory interpretation of section 614.1(9) is required, the majority ignores a basic rule of construction. That is, when the legislature provides an exception to a general proscription, it is presumed no other exceptions are

created. *Iowa Farmers Purchasing Association v. Huff,* 260 N.W.2d 824, 827 (Iowa 1977). Legislative intent is expressed by both inclusions and exclusions; reference to one thing implies the exclusion of others. *In re Estate of Wilson,* 202 N.W.2d 41, 44 (Iowa 1972). The sole exception under section 614.1(9) for injury or death caused by "a foreign object unintentionally left in the body" implies there are no other exceptions to the six-year limitation period.

We have indicated that our decision in *Baines v. Blenderman,* 223 N.W.2d 199, 201 (Iowa 1974) triggered the enactment of section 614.1(9). *Farnum v. G.D. Searle & Co.,* 339 N.W.2d 392, 395 (Iowa 1983). We stated in *Farnum* that "[s]ection 614.1(9) was enacted as part of a comprehensive act as a response to 'a critical situation' caused by 'the high cost and impending unavailability of medical malpractice insurance.'" 339 N.W.2d at 395 (quoting 1975 Iowa Acts ch. 239, § 1). It seems illogical to attribute the sole reason for the statute is the elimination of the discovery rule when the doctrine of fraudulent concealment is likewise costly and affects the availability of insurance coverage. I believe the legislature intended the six-year limitation period under section 614.1(9) to apply to all malpractice claims except for "foreign object" claims as set forth in the statute. I therefore would affirm the trial court's ruling.

UHLENHOPP and McGIVERIN, JJ., join this dissent.