Robert WILLIS, Tom Bixby, Virgil Douglas, Wilma Thompson, Don Washburn, and Francine McCoy, Appellants,

v.

CITY OF DES MOINES, Iowa, and Tim Urban, George Flagg, Archie Brooks, George Nahas, L. Clark Priebe, Elaine Szmoniak, and Peter Crivaro, Mayor, in their official capacity as the Des Moines, Iowa, City Council, Appellees,

and

American Mutual Life Insurance Co., Carriers Insurance Co., Ruan Center Corp., Marriott Corp., City Center Development, Iowa Realty Co., United Central Bank of Des Moines, N.A., Employers Mutual Casualty Co., Locust Mall, Ltd., Tower Locust Ltd., Younkers, Inc., State Auto & Casualty Underwriters, Inc., Iowa-Des Moines National Bank, Graham Investment Co., and American Federal Savings and Loan Association, Intervenors-Appellees.

No. 83–1020.

Supreme Court of Iowa.

Filed Nov. 14, 1984.

Helen L. Stirling, Des Moines, for appellants.

James Nervig, Des Moines Asst. City Atty., for appellees.

Edgar F. Hansell, James E. Gritzner, Kasey W. Kincaid of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, and John A. McClintock of Hansen, McClintock & Riley, Des Moines, for intervenors-appellees.

Considered by UHLENHOPP, P.J., and McGIVERIN, LARSON, SCHULTZ and WOLLE, JJ.

SCHULTZ, Justice.

The City of Des Moines operates a pedestrian walkway system (skywalk) in its downtown area which is connected to many buildings containing private businesses. This appeal arises from an action by a group of unhappy taxpayers and residents which sought a declaratory judgment against the City regarding the meaning of the city ordinance creating the skywalk system and the resulting contracts with owners of connected business properties (private sector). The private sector intervened on behalf of the City. The plaintiffs then amended their petition to include the intervenors as defendants seeking a declaratory judgment that the private sector had a duty under both the ordinance and their contracts to provide and pay for the cost of security on the skywalk. Plaintiffs further sought a decree compelling specific performance of such contractual duty and enjoining the City from altering the contractual duty to provide such security.

The City and intervenors filed a joint motion for summary judgment claiming

there was no genuine factual issue and they were entitled to dismissal as a matter of law. The motion was sustained by the district court, and this appeal followed. We affirm.

After study and planning, including input from both the public and private participants, the Des Moines City Council adopted the skywalk ordinance on June 23, 1980. Des Moines, Ia., Code ch. 23, subch. 16 (1979). An administrative agency titled the skywalk commission was created. Des Moines, Ia., Code § 23.240 (1979). The ordinance delineated the division of responsibilities for the system between the public and private sectors providing that the private property owners "shall be responsible for the cost of operation, maintenance and repair of that portion of the skywalk system traversing their private property ... all in conformance to the operation, maintenance and repair standards set by the Skywalk commission." Des Moines, Ia., Code § 23–243(1)(d) (1979). A commission duty was to set minimum standards for operation of the skywalk, and "operation" was defined to "include heating, cooling, lighting, cleaning and *providing security* for the Skywalk system." Des Moines, Ia., Code § 23–240(3)(a) (1979) (emphasis added). Security was not defined further.

The City and the individual property owners entered into skywalk agreements. These agreements included easements that ran from the private property owners to the City "for the sole use and benefit of the public at large as a public way" with respect to the portions of private property which became a part of the skywalk system. Thus, the skywalk corridors through building areas originally belonging to private property owners were converted to public ways for public use.

The matter of security was addressed in Article VII of the agreements in which the members of the private sector assumed responsibility to the City "for operation, maintenance and repair ... as provided in the Skywalk Ordinance and as contained herein." Additionally, the agreements provided in pertinent part:

In addition to anything else required by the Skywalk Commission, as determined pursuant to their decision powers under the Skywalk Ordinance, such operation, maintenance and repair of the Skywalk Bridge shall include:

. . . .

(d) providing security of and on said Skywalk Bridge; provided, however, that the City shall provide customary city police protection to the Skywalk Bridges and Skywalk Corridors in the same manner as it provides police protection to the other private and public properties within the corporate limits of the City of Des Moines.

No further definition of "security" was detailed in the contracts.

The lack of a specific definition of the term "security" in both the ordinance and the agreements apparently raised questions concerning the responsibilities of the parties. In a letter dated September 27, 1982, the commission informed the mayor and council members that it had held a public hearing on proposed minimum standards for security which was continued over several meetings. As a result, the commission unanimously decided that the matter be referred to the council for consideration and recommended the skywalk ordinance be amended to place the responsibility for providing security on the City. The commission further recommended that private property owners provide surveillance within the corridors and bridges connected to their property, but it was unable to agree on who would pay for the security in the skywalk system.

On October 4, the council responded to the commission's recommendation by adopting a resolution "to clarify the extent of property owner responsibility for security of Skywalks" and resolving to amend Article VII(d) of the skywalk agreement to read as follows:

Operation, maintenance and repair of a Skywalk Bridge shall include:

(d) providing surveillance of and on said Skywalk Bridge. If as a result of such surveillance, or otherwise, a par-

ty has knowledge of a violation of law, such party, in its sole discretion, either shall undertake the initial action to handle the situation itself or shall immediately contact the City Police Department. The City shall provide customary City police protection to the Skywalk Bridges and Skywalk Corridors in the same manner as it provides police protection to other private and public properties within the corporate limits of the City.

Later the council amended its skywalk ordinance to make it consistent with the resolution, and amended agreements were executed. The amendment substituted the term "surveillance" for the term "security" and specifically placed a new responsibility on the private sector participants when providing surveillance to intercede in situations which could be resolved without police action and to contact the city police department in situations which could not. The amendment further provided that the City would be responsible to provide city police protection to the skywalk bridges and corridors only in the same manner as it provides police protection to other private and public properties within the city.

The gist of plaintiffs' action is to secure the court's aid in compelling the private sector to provide security or pay for all security costs including policing the skywalk. Plaintiffs maintain the amendments are illegal because the changes violate the plain terms of the contract and confer a benefit upon the private sector without consideration in violation of article III, section 31 of the Iowa Constitution. The language which plaintiffs rely upon provides, "[n]o extra compensation shall be made to any ... contractor, after the service shall have been rendered, or the contract entered into...." Iowa Const. art. III, § 31. In support of their position plaintiffs cite *Love v. City of Des Moines*, 210 Iowa 90, 230 N.W. 373 (1930), as authority for the proposition that this section of the Iowa Constitution prohibits a city council from appropriating public money to private use without public benefit. Plaintiffs assert that the resolution of the city council varied the terms of a preexisting contract and conferred a private financial bonus or gift, the elimination of the requirement to provide security, without a public benefit.

There is no dispute that the original ordinance and contracts place responsibility for security on the private sector without defining the term "security." The contract also provided that the City was to provide "customary police protection to the skywalk." The original and amended contracts were an outgrowth of the ordinance and its amendment; the agreements specifically incorporated the ordinance. Consequently, our query must focus on the change of the word "security" to "surveillance" in the ordinance to determine whether the council's amendment violated article III, section 31 of the Iowa Constitution.

Our initial inquiry concerns whether the use of the term "security" in the original ordinance was ambiguous. If a legislative act is unambiguous, a court will not apply rules of construction to ascertain its meaning. *LeMars Mutual Insurance Co. v. Bonnecroy*, 304 N.W.2d 422, 424 (Iowa 1981). In its enactment of the skywalk ordinance, the council did not provide a definition of the term "security" or specify what duties were encompassed by the term. A dictionary definition refers to "protect," "protection" and "measures taken to guard against espionage or sabotage, crime, attack, or escape." Webster's New Collegiate Dictionary 1037 (8th ed. 1981). "Security" is a broad general term that could mean many things, e.g., providing watchmen, private detectives or surveillance by camera. We conclude the term has more than one meaning or use, and its use in the ordinance is unclear and ambiguous.

When faced with an ambiguous term in a legislative act, we may invoke rules of statutory construction to aid us in determining its meaning. Iowa Code § 4.6 (1983); *Janson v. Fulton*, 162 N.W.2d 438, 443 (Iowa 1968). The interpretation of a statute or ordinance is a question of law which must be determined by the court.

*State v. Hellwege*, 294 N.W.2d 689, 691 (Iowa 1980); *Cassady v. Wheeler*, 224 N.W.2d 649, 651 (Iowa 1974). In this task we utilize intrinsic and extrinsic rules of construction. Intrinsic aids to construction arise from the composition and structure of the act, while extrinsic aids pertain to matters outside the act. Extrinsic aids consist of background information concerning the circumstances which led to the enactment of a statute. 2A *Sutherland Statutory Construction* § 48.01 (4th ed. 1973).

When the trial court granted summary judgment, it necessarily interpreted the meaning of the ordinance and amendment in a manner it deemed constitutional. The plaintiffs maintain that the court erred in summarily interpreting the ordinance without receiving evidence, extrinsic to the ordinance, that would have aided in the court's interpretation and construction.

█ Plaintiffs are correct in their assertion that summary judgment is only proper when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c). The burden of showing nonexistence of a material fact is upon the moving party. *Colonial Baking Co. v. Dowie*, 330 N.W.2d 279, 282 (Iowa 1983). Unless he elects to stand on the weakness of his opponent's case to successfully resist such motion, the resisting party must set forth specific evidentiary facts showing the existence of a genuine issue of material fact. Iowa R.Civ.P. 237(e); *Schulte v. Mauer*, 219 N.W.2d 496, 500 (Iowa 1974). An affidavit resisting the motion "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Rule 237(e).

█ Plaintiffs' claim that a genuine fact issue existed concerning the intent of the council in enacting and amending the ordinance causes us to examine the rules concerning the admissibility of evidence of extrinsic facts that are probative of legislative intent. When a legislative act is ambiguous and uncertain, competent evidence

of facts extrinsic to the act tending to show the meaning of the act may be admissible. 82 C.J.S. *Statutes* § 361 (1953). We have relied on evidence of that legislative intent. *See State v. Williams*, 315 N.W.2d 45, 49 (Iowa 1982) (similar statutes and prior judicial decisions); *Peffers v. City of Des Moines*, 299 N.W.2d 675, 679 (Iowa 1980) (prior acts and preamble); *Iowa State Education Association v. Public Employment Relations Board*, 269 N.W.2d 446, 447–48 (Iowa 1978) (agency interpretation and deletion of part of the original proposal). When technical words, or terms of art of a profession are used, opinion evidence by experts from the profession may be admitted to explain their meaning. However, opinions concerning the legal effect of the words used in an act are not material. 82 C.J.S. *supra*, § 361, at 793. We have rejected as inadmissible opinions offered by legislators on the subject of legislative intent. *Iowa State Education Association*, 269 N.W.2d at 448; *Consolidated Freightways Corp. v. Nicholas*, 258 Iowa 115, 122, 137 N.W.2d 900, 905 (1965); *Tennant v. Kuhlemeier*, 142 Iowa 241, 245, 120 N.W. 689, 690 (1909); *State v. Burk*, 88 Iowa 661, 664–65, 56 N.W. 180, 181 (1893). It has been held:

> [T]he opinions of individual legislators, remarks on the passage of an act or the debates accompanying it, or the motives or purposes of individual legislators, or the intention of the draughtsman are too uncertain to be considered in the construction of statutes.

*Tennant*, 142 Iowa at 245, 120 N.W. at 690.

We shall first examine the motion for summary judgment without considering the resistance. The motion for summary judgment was supported by a synopsis of facts outlining the ordinances, agreements, and amendment, including the council resolution correcting and clarifying the term "security." Plaintiffs concede that if the changes merely clarified rather than changed what the parties had intended, the council did not illegally convey an additional private benefit to the private sector. Consequently, we deem it important to

closely examine the resolution that preceded the amendment.

In this instance the council, by the subsequent enactment of an amendment, provided its own interpretation of the word "security" which was used in the first ordinance. In a resolution adopted by the council on November 22, 1982, the council recognized that the requirement that the property owners provide "security" had resulted in a great amount of confusion and debate on the part of representatives of the City and the property owners. Indicating that the term "security" within the original ordinance needed to be clarified and the concept restated in more explicit terminology to remove any doubt concerning the nature and extent of the responsibilities of the parties, the council resolved that the responsibility for "security" imposed on the property owners under the original ordinance had been intended to require the property owners to provide and pay for surveillance and monitoring of the skywalk system in accordance with minimum standards established by the commission. The resolution further provided that this surveillance was intended to complement the separate and distinct responsibility imposed upon the city to provide police protection; it never had been intended that the property owners be responsible for hiring off-duty police officers or other individuals to patrol the skywalk system since this would overlap with the City's responsibility to provide police protection. The skywalk ordinance was amended by substituting the word "surveillance" for the word "security" and designating the duties included under the term "surveillance."

■■■ Amendment of a statute may evidence legislative intent to change its meaning or to clarify it, but when the legislation appears to have been passed to remove doubt from previous legislation, the courts should give effect to that purpose. *Barnett v. Durant Community School District*, 249 N.W.2d 626, 629 (Iowa 1977) (citation omitted). In *Barnett* we stated the rule used to ascertain legislative purpose is as follows:

Whether or not a subsequent statute sheds light upon the meaning of a former statute depends upon a number of circumstances. Where the original law was subject to very serious doubt, by permitting subsequent amendments to control the former meaning a great deal of uncertainty in the law is removed. And the legislature is probably in the best position to ascertain the most desirable construction.

*Id.* (quoting 2A *Sutherland Statutory Construction* § 49.11 (4th ed. 1973)). Additionally, when there are two possible constructions of an enactment, we adopt the one which will not render the enactment unconstitutional. *State v. McGuire*, 200 N.W.2d 832, 833 (Iowa 1972).

■■■ In the present case the city council discussed the confusion raised by the ambiguous term "security" and specifically expressed its intent to clarify, not change, the ordinance by substituting the term "surveillance" for the term "security." Surveillance, when defined as a "close watch kept over someone or something," Webster's New Collegiate Dictionary 1165 (8th ed. 1981), is clearly a form of security, which is defined as a "measure taken to guard against ... crime," *id.* at 1037. The amendment to the ordinance simply clarifies the form of security that originally was required in the first ordinance; it does not constitute a change which might render this statute unconstitutional by conferring a private financial gain upon contractors without a public benefit.

■■■ The previous discussion only applies to the movants' motion and would not be dispositive if a genuine fact issue existed as a result of matters shown in plaintiffs' resistance. Plaintiffs elected not to stand on the weakness of movants' motion, but filed a resistance and a supported statement of disputed issues. In our examination of that portion of the proceedings, we must keep in mind that movants retain the burden of showing the nonexistence of material fact issues. The plaintiffs resisted, claiming an issue of fact existed concerning the substance of the changes which

they assert were substantial and material. The resistance referred to the affidavit of a plaintiff outlining the affiant's attendance at the meetings when this issue was discussed. The affiant opined that the changes were material and substantial and disagreed with the city council's resolution that the changes were intended to correct or clarify. This opinion is not that of an expert relating to technical terms, but is merely an inadmissible legal conclusion concerning the legal effect of the language in the ordinance. The affiant's opinions do not meet the standards of admissible evidence given by a competent witness as required in rule 237(e).

Additionally, the affidavit and resistance referred to and incorporated letters by the city manager and the director of traffic and transportation. While the director apparently acted as secretary to the skywalk commission, his letters did not purport to state or provide an administrative opinion concerning the meaning of the ordinance. The authors did not purport to express an expert opinion concerning the meaning of the term "security." The letters pointed out the controversy over the responsibilities and duties entailed in providing "security," and in a general manner the writers opined that the cost of security should be borne by the private sector. Both letters outlined the political judgments of the writers that the council should make no changes in the ordinance and that the matter should be referred back to the administrative body, the commission, for the establishment of standards within the parameters of the first ordinance. Reduced to bare essentials, plaintiffs' affidavit and supporting letters present mere conclusions that the private sector was being relieved of some unspecified duty inherent in providing security. No specific admissible facts have been provided that aid construction of the disputed term in consideration of the constitutional challenge. Mere conclusions are fatally defective under rule 237(e). *Prior v. Rathjen*, 199 N.W.2d 327, 331–32 (Iowa 1972). We conclude the resistance does not reveal the existence of admissible evidence presenting a genuine fact issue.

The parties have also presented arguments and points that we have not specifically addressed. We have considered them, however, and find them without merit.

In summary, we conclude that construction of the ordinance and amendment did not require further evidence and that it was proper for the trial court to decide the issue as a matter of law. A proper construction of the original ordinance indicates the amendment merely clarified the meaning of the term "security" and appropriately defined the term by establishing specified duties. Such amendment did not violate article III, section 31 of the Iowa Constitution. Thus, the trial court's sustention of the motion for summary judgment was proper. The City and intervenors were entitled to a dismissal as a matter of law.

AFFIRMED.