# IN THE COURT OF APPEALS OF IOWA

No. 22-0716
Filed February 22, 2023

**ESTATE OF DONALD L. GROVE, and KAREN L. GROVE, Individually and as administrator of the ESTATE OF DONALD L. GROVE,**
    Plaintiffs-Appellants,

**vs.**

**CLINIC BUILDING COMPANY, INC.,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Story County, John R. Flynn, Judge.

Plaintiffs appeal the district court's grant of summary judgment against them. **AFFIRMED.**

Thomas A. Palmer of Lawyer, Dougherty & Palmer, PLC, West Des Moines, for appellants.

J. Scott Bardole of Andersen & Associates, West Des Moines, for appellee.

Heard by Vaitheswaran, P.J., and Greer and Chicchelly, JJ.

**GREER, Judge.**

Donald and Karen Grove sued Clinic Building Company, Inc. (CBC), the owner of the parking lot where Donald Grove fell and fractured his right hip in October 2019. After filing but before trial, Donald passed away and his estate was substituted in his place. CBC moved for summary judgment, which the district court granted. The estate and Karen now argue several pieces of evidence were wrongly deemed inadmissible. Because we agree with the district court that the admissible evidence did not generate a question of material fact, we affirm.

I. Background Facts and Prior Proceedings.

On March 24, 2021, Donald filed a petition alleging that in October 2019, he was on his way to a clinic for cancer treatment. He parked in a handicap-accessible space in a nearby parking lot owned by CBC. The petition stated that when exiting the vehicle, "he stepped into an unmarked storm drain, fell over a curb, and fractured his right hip." He was taken to the emergency room, where he received weeks of care. The petition described CBC's alleged negligence in failing to design, construct, and maintain the handicap parking area. It also alleged CBC failed to warn of the area's "dangerous nature" and breached "its duty to use reasonable measures to protect the safety of [Donald] and other users of its handicapped parking area." The petition also contained Karen's claims for deprivation of Donald's companionship, aid, services, affection, and society. In June, Donald passed away; Karen was named administrator of his estate. She modified the petition to substitute Donald's estate in his place.[1]

---

[1] We refer to these parties collectively as "the estate" throughout the rest of the opinion.

Donald was the only known witness to his fall,[2] but the estate offered various statements it attributed to Donald as evidence. First, there were notes in Donald's medical records, which had various comments that Donald fell when he tripped on a curb. One of those statements, made to Dr. Curtis Waite shortly after the fall, repeated Donald's explanation of the fall—"he 'tripped over his own feet,' stumbled over a curb, and landed on his right hip and right wrist. . . . States this was purely a mechanical fall. States he was just clumsy."[3] CBC considered this statement an admission against interest. But other statements in the medical records on the day of the fall were offered by the estate to show CBC's negligence, including that "[Donald w]as coming in for radiation, fell stepping up to the curb," "[Donald] was on his way today to have radiation his third out of 5 treatments when he tripped on the curb and fell and fractured his right hip," and "[Donald] tripped coming to the hospital today to get radiation treatment." Then about a week later, a note in the medical record stated Donald "was on his way to his radiation therapy appointment when he tripped on a curb, fell, and suffered a right hip fracture." On top of the medical records, the estate also offered a recording of a statement Donald made to an insurance adjuster from CBC's insurer in March 2021; he told the insurance adjuster:

> I went to get up on the, the sidewalk, and the next thing I know I'm, I'm on the ground.
> . . . .

---

[2] CBC's safety and environmental coordinator, Seth McCoy, investigated the incident. The clinic's video surveillance does not capture the location of Donald's fall, and McCoy was unable to find a witness; the estate also did not produce any eyewitness to the district court.

[3] This was the only statement in the records that was placed in quotation marks.

. . . I just got out of the car by the round intake and went to step up. I didn't realize the sidewalk had a step up on it, and I ended up on the ground. The other places I had parked were level.

. . . .

I think the sidewalk being too high there [caused me to fall].

The estate also certified an expert—Dr. Arvid Osterberg, a professor of architecture at Iowa State University—who compiled a report on the incident based on his observations of the parking lot and the recorded statement from Donald. Dr. Osterberg provided an affidavit containing two excerpts from his report. The first excerpt said:

It is evident from Mr. Grove's recorded statements that he did not anticipate the high step up that he encountered. He may have caught the toe of his shoe on the edge of the curb as he stepped up the unexpectedly high step. He may also have caught the toe of his shoe in one of the two-inch-wide square holes in the drain cover. It is also possible that he lost his footing as he stepped up due to the sloped surface near the drain cover. Regardless of exactly what happened, the location was unsafe and did not comply with [Americans with Disabilities Act] Requirements.

The second excerpt provided:

The unsafe conditions caused Mr. Grove to misstep, fall and suffer serious injuries. Had the parking lot been properly designed, constructed, and maintained, and/or had proper warning of the hazardous locations been present, it is more likely than not that Mr. Grove would have not fallen and suffered serious injuries.

CBC moved for summary judgment, claiming the estate failed to provide any admissible evidence supporting its claim it was the negligence of CBC that caused Donald's fall. It argued that the notes in Donald's medical records and statements to the insurance adjuster were inadmissible hearsay;[4] and while it

---

[4] *See* Iowa R. Evid. 5.802 ("Hearsay is not admissible unless any of the following provide otherwise: the Constitution of the State of Iowa; a statute; these rules of evidence; or an Iowa Supreme Court rule.").

agreed the statement to Dr. Waite was admissible as an admission by a party opponent,[5] the statement supported its assessment that the injury was caused by Donald's clumsiness rather than CBC's negligence. It also argued that Dr. Osterberg's opinion about the cause of Donald's fall was inadmissible because it was based on inadmissible evidence and the estate did not establish the recorded statement was the type of evidence typically relied upon by experts in his field. So, there was no admissible evidence that could establish that CBC's alleged negligence was the cause of Donald's fall. The estate argued the medical record notes were admissible as statements made for a medical diagnosis or treatment, or under the residual hearsay exception. Further, it believed the recorded conversation with the insurance adjuster would also be admissible under the residual hearsay exception or under Iowa Rule of Evidence 5.703[6] because the recording was used by Dr. Osterberg in forming his expert opinion.

The district court granted CBC's motion for summary judgment. The estate appealed.

II. Analysis.

We review the district court's grant of summary judgment for correction of errors at law. *Slaughter v. Des Moines Univ. Coll. of Osteopathic Med.*, 925 N.W.2d 793, 800 (Iowa 2019). "Summary judgment is proper when the movant

---

[5] *See* Iowa R. Evid. 5.801(d)(2)(A) (excluding from the definition of hearsay statements made by and offered against an opposing party).

[6] Rule 5.703 (2022) states:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

establishes there is no genuine issue of material fact and it is entitled to judgment as a matter of law." *Id.* (citation omitted). "We view the record in the light most favorable to the nonmoving party." *Id.* (citation omitted). And we "draw all legitimate inferences the evidence bears that will establish a genuine issue of material fact." *Banwart v. 50th St. Sports, L.L.C.*, 910 N.W.2d 540, 545 (Iowa 2018) ("A legitimate inference is 'rational, reasonable, and otherwise permissible under the governing substantive law.'" (citation omitted)). Still, "the resisting party may not rest on mere allegations in its pleadings but rather must set forth specific material facts showing that a genuine disputed issue exists for resolution at trial." *Buboltz v. Birusingh*, 962 N.W.2d 747, 754 (Iowa 2021).

"Motions for summary judgment must also be decided based on admissible evidence." *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 106 (Iowa 2012); *see also Kindig v. Newman*, 966 N.W.2d 310, 322 (Iowa Ct. App. 2021) ("While evidence need not be in an admissible form at the summary judgment stage, its *content* must be admissible. Here, [plaintiff] sought to avoid summary judgment by relying on his own deposition testimony *about what other people told him* about [the premises]. These statements were inadmissible hearsay. [Plaintiff] could not have testified about those statements at trial. So they could not provide a basis to avoid summary judgment." (internal citations omitted)). We evaluate the evidence the estate offers—(1) statements in the medical records, (2) statements made to Dr. Waite, (3) the recorded statement to the insurance adjuster, and (4) Dr. Osterberg's affidavit—to determine what is admissible and if that admissible evidence establishes a genuine issue of material fact.

A. Admissibility.

The district court determined that the statements Donald made to Dr. Waite that are recorded in his medical records are admissible evidence. A collection of other statements in Donald's medical records, the recorded call to the insurance agent, and the affidavit from Dr. Osterberg, however, were ruled inadmissible. We consider the admissibility of these three pieces of evidence before determining if the evidence generated a genuine issue of material fact.

*i. Medical Records.*

At different times throughout his treatment for the hip fracture, three doctors and one nurse entered notes into Donald's medical record stating Donald "fell stepping up the curb," "tripped on the curb and fell," "tripped on the curb, fell," and "tripped coming to the hospital today." CBC challenged these statements as lacking foundation to establish they were made by Donald and contended that, even if proper foundation was laid, the statements are inadmissible hearsay. *See* Iowa Rule of Evid. 5.801 (defining hearsay as "a statement that . . . [t]he declarant does not make while testifying at the current trial or hearing," which "a party offers into evidence to prove the truth of the matter asserted in the statement"). "[W]e review rulings on hearsay for the correction of legal error." *State v. Veverka*, 938 N.W.2d 197, 202 (Iowa 2020).

And while the medical records themselves might be admissible at trial with proper foundation, hearsay statements in those records are another matter. This is because the statements made in the medical records constitute double hearsay. *In re Poulos' Est.*, 229 N.W.2d 721, 727 (Iowa 1975) ("The hospital record is hearsay. . . . [And] it may include recitals of statements of others, including the

patient. This included hearsay is the subject of the 'double hearsay' rule. Included hearsay is inadmissible, upon proper objection, unless it independently comes within a recognized exception to the hearsay rule." (citation omitted)); *Ceaser v. Marshalltown Med. & Surgical Ctr.*, No. 18-2101, 2020 WL 1310299, at *3 (Iowa Ct. App. Mar. 18, 2020) ("Medical records offered to prove the truth of the matters asserted are hearsay. And when those records include statements allegedly made by others, the hearsay is subject to the 'double hearsay' rule. That hearsay is inadmissible unless it independently falls under one of the recognized exceptions to the hearsay rule." (internal citations omitted)). So, both the medical record and the statements purportedly made by Donald must fall into a hearsay exception to be admissible. *See* Iowa R. Evid. 5.805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule.").

We begin by assuming, for the sake of argument, that these four quotations in the medical records were based on statements made by Donald, even though some of the records confirm the presence of family members in the treatment rooms. And while the dissent is correct that no one else witnessed the fall, we cannot know, without testimony from the doctors, if those were statements from Donald since there are no quotes around the words, his family members, or if the doctors paraphrased that narrative from the actual first statements Donald did make. Iowa Rule of Evidence 5.803(4) excepts from the hearsay rule any statement that is both (1) "made for—and is reasonably pertinent to—medical diagnosis or treatment" and (2) "[d]escribes medical history, past or present symptoms or sensations, or the inception or general cause of symptoms or

sensations." "The rationale for [this] exception is that statements made by a patient to a doctor for purposes of medical diagnosis or treatment are 'likely to be reliable because the patient has a selfish motive to be truthful.'" *State v. Smith*, 876 N.W.2d 180, 185 (Iowa 2016) (citation omitted); *accord id.* ("This motive exists because the effectiveness of the medical treatment rests on the accuracy of the information imparted to the doctor.").

But the estate did not provide any evidence establishing that the cause of the fall was necessary or pertinent to Donald's medical treatment or diagnosis—a doctor would need to know that Donald fell, which caused his fractured hip, but the reason he fell was not pertinent to his medical care. *See Poweshiek Cnty. Nat'l Bank v. Nationwide Mut. Ins. Co.*, 156 N.W.2d 671, 675 (1968) ("A doctor might testify or put in his record that his patient told him that he was hit by a car while crossing the street but the doctor may not testify as to charges of negligence made by his patient against the driver of the car."); *cf.* Fed. R. Evid. 803(4) advisory committee's note (explaining, under the federal counterpart to rule 5.803(4), that while statements about causation may be pertinent to diagnosis and treatment, statements of fault ordinarily are not, as seen in the following example: "[A] patient's statement that he was struck by an automobile would qualify [under the exception] but not his statement that the car was driven through a red light"). And, the variations in the statements over how the fall occurred bolster the conclusion that the "why" of how it happened was not pertinent to the treatment, because if so, the medical providers would have been more exacting. In the end, it is not

necessary to know what Donald tripped over to treat a fractured hip. These statements, then, are not admissible under rule 5.803(4).[7]

*ii. Insurance Adjuster.*

Next, we look to the recorded phone call between Donald and the insurance adjuster. The estate argued to the district court that the phone call was admissible under the residual hearsay exception found in rule 5.807,[8] which provides that a hearsay statement not otherwise excepted under rules 5.803 or 5.804 is "not excluded by the rule against hearsay" if (1) "[t]he statement has equivalent circumstantial guarantees of trustworthiness," (2) "is offered as evidence of a material fact," (3) "is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts," and (4) its admission "will best serve the purposes of these rules and the interests of justice." The district court concluded the last three factors were satisfied; but it ultimately ruled the estate had "failed to carry [its] burden" as to the first.

The residual hearsay exception is a narrow one that is "to be applied sparingly." *State v. Liggins*, 978 N.W.2d 406, 432 (Iowa 2022). As required, the district court considered a number of factors to conclude this statement was not sufficiently trustworthy to fit within rule 5.807's narrow bounds including:

> (1) the declarant's propensity to tell the truth; (2) whether the alleged statements were made under oath; (3) assurance of declarant's

---

[7] The estate also argues the statements could be admissible as records of regularly conducted activity under rule 5.803(6). This exception could apply to the records but not to Donald's statements.

[8] As of January 1, 2023, this rule has been updated; but, because we are reviewing an action filed and hearing held before that date, we use the previous version. Iowa Supreme Ct. Supervisory Order, *In the Matter of Adopting Amendments to the Iowa Rules of Evidence in Chapter 5 of the Iowa Court Rules* 4 (Sept. 14, 2022).

personal knowledge; (4) the time lapse between the alleged event and the statement concerning the event; (5) the motivations of the declarant in making the statement; (6) corroboration; (7) reaffirming or recanting the statement by the declarant; (8) credibility of the witness reporting the statement; and (9) the availability of the declarant for cross-examination.

*See State v. Weaver*, 554 N.W.2d 240, 248 (Iowa 1996) (laying these out as factors to consider in determining trustworthiness under the residual hearsay exception). So, unlike the dissent, we cannot find that the requirement CBC had to produce the recorded statement has anything to do with its trustworthiness. We agree with the district court that the circumstances surrounding the statement do not provide supplemental guarantees of trustworthiness. When Donald made the statement, it was years after the fall. Likewise, the recorded statement testimony is not so clear cut but reads as if Donald assumes that is how he fell. "A vague statement that does not establish a clear fact may be less trustworthy." *Liggins*, 978 N.W.2d at 432. And the recorded statement's discussion of the curb causing his fall is inconsistent with his more-recent-in-time statement attributed to him by Dr. Waite shortly after the fall that he was "just clumsy" and "tripped over his own feet." Finally, Donald had a monetary interest in telling the insurance adjuster that his fall was caused by problems with the parking lot. Overall, we do not find any error in the district court's determination that the evidence was inadmissible.[9]

---

[9] The estate argues we should infer that Donald's statements are trustworthy given our summary judgment standard. But even though we consider the facts in the light most favorable to the non-moving party at the summary judgment stage, "the asserted facts must meet the standards of admissible evidence." *Stueckrath v. Bankers Tr. Co.*, No. 06-0803, 2007 WL 258292, at *3 (Iowa Ct. App. Jan. 31, 2007) (citing *Willis v. City of Des Moines*, 357 N.W.2d 567, 573 (Iowa 1984) (requiring a showing of "admissible evidence presenting a genuine fact issue" in the summary judgment context)).

*iii. Dr. Osterberg.*

The final piece of evidence the district court determined was inadmissible was Dr. Osterberg's affidavit. "Generally, [Iowa courts] have been committed to a liberal view on the admissibility of expert testimony." *Ranes v. Adams Lab'ys, Inc.*, 778 N.W.2d 677, 685 (Iowa 2010). We review the district court's "decision to admit or exclude expert testimony for an abuse of discretion" and "will reverse a decision by the district court concerning the admissibility of expert opinions only when the record shows 'the court exercised [its] discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *Id.* (alteration in original) (citation omitted). The test for the admissibility of expert testimony begins with determining "if the testimony 'will assist the trier of fact' in understanding 'the evidence or to determine a fact in issue;'" then, "the court must determine if the witness is qualified to testify 'as an expert by knowledge, skill, experience, training, or education.'" *Id.* (citing Iowa R. Evid. 5.702).

> We also look at the basis of the expert's opinion.
>
> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Iowa R. Evid. 5.703. In his affidavit, Dr. Osterberg explained he relied on measurements and photographs he took at the scene of Donald's fall and Donald's recorded statement to the insurance adjuster. We have already determined that the recorded statement to the insurance adjuster is not admissible. And, as was conceded by the estate in the oral argument and as the district court noted, there was no evidence that this recorded statement to an insurance adjuster was the

kind of thing experts in Dr. Osterberg's field would reasonably rely on when developing their opinion. *See Rieder v. Segal*, 959 N.W.2d 423, 431 (Iowa 2021) ("The proponent [of the evidence] must demonstrate that the information is customarily relied upon by experts in their field and that such information is sufficiently reliable."). And even more so, contrary to the position of the dissent, a general statement about a parking lot and its design means nothing if you cannot even identify how or where a person fell—such as the case here.

Because Dr. Osterberg's opinion of the causal relationship between the noncompliance and Donald's fall was developed based on inadmissible evidence not shown to be customarily relied upon by experts in Dr. Osterberg's field, we do not find the district court abused its discretion in finding this opinion inadmissible.

B. Question of Material Fact.

Taking just the admissible evidence, we turn to determining if it generates a genuine question of material fact. The estate's petition alleged that CBC was negligent and that negligence led to Donald's injuries and Karen's loss of consortium. "An actionable negligence claim requires 'the existence of a duty to conform to a standard of conduct to protect others, a failure to conform to that standard, proximate cause, and damages.'" *DeSousa v. Iowa Realty Co., Inc.*, 975 N.W.2d 416, 420 (Iowa 2022) (citation omitted). Specifically, CBC's motion for summary judgment argued the estate failed to provide any admissible evidence showing that CBC's negligence was the cause of the fall.

After weeding out the inadmissible evidence on the matter, all that remains is Donald's statement to Dr. Waite that he "tripped over his own feet" and was "just clumsy." We agree with the district court that this did not generate a material fact

question about the cause of Donald's fall. *See Banwart*, 910 N.W.2d at 545 ("[T]he nonmoving party may not rest upon the mere allegations of his [or her] pleading but must set forth specific facts showing the existence of a genuine issue for trial." (second alteration in original)). We affirm the grant of summary judgment.

III. Conclusion.

Based on the admissible evidence, we find there was no genuine question of material fact as to the cause of Donald's fall and so find no error in the district court's grant of summary judgment for CBC.

**AFFIRMED.**

Chicchelly, J., concurs; Vaitheswaran, P.J., dissents.

**VAITHESWARAN, Presiding Judge** (dissenting).

I respectfully dissent. I would conclude the evidence offered in resistance to CBC's summary judgment motion was admissible and generated genuine issues of material fact that precluded summary judgment.

First, with respect to the medical records, I believe the statements Donald Grove made to medical providers were reasonably pertinent to medical diagnosis and treatment. *See* Iowa R. Evid. 5.803(4). CBC argues the statements could not be attributed to Donald but at the same time asserts no one else witnessed the fall. There can be little doubt then that the statements were made by Donald to medical providers. CBC also asserts the statements went to the ultimate legal issues in the case. While I agree a patient's attributions of fault or negligence are inadmissible under the medical diagnosis and treatment exception to the hearsay rule, none of Donald's statements imputed fault or negligence to CBC. Instead, all were statements explaining what happened—statements that led medical providers to diagnose Donald with a broken hip requiring immediate hip-replacement surgery. I would conclude the statements constituted admissible evidence in support of the estate's resistance to the summary judgment motion and created a genuine issue of material fact precluding summary judgment.

Second, with respect to Donald's recorded statement to the insurance adjustor, I would conclude the statement contains the necessary guarantees of trustworthiness required by the residual exception to the hearsay rule. *See* Iowa R. Evid. 5.807(a)(1). The exception is indeed narrow. *See State v. Skahill*, 966 N.W.2d 1, 10-11 (Iowa 2021). But the statement was taken by an adjuster and, based on Grove's answers to interrogatories attached to the defense summary

judgment motion, was "produced by defendant." CBC did not dispute the estate's assertion that the adjuster worked for CBC's property and casualty insurer. Although the statement was taken seventeen months after the accident, Grove's claim that he tripped over the curb was consistent with his statements to medical personnel at the time of the accident, underscoring its reliability. I would conclude the recorded statement satisfied the residual exception's requirement of trustworthiness. *See State v. Veverka*, 938 N.W.2d 197, 203 (Iowa 2020) ("With respect to trustworthiness, the relevant consideration is whether the proffered evidence has 'circumstantial guarantees of trustworthiness." (citation omitted)).

That brings me to the opinion of the estate's expert. Though he initially couched his statements in terms of possibilities, the final paragraph of his attestation was more concrete. He opined, "Had the parking lot been properly designed, constructed, and maintained, and/or had proper warning of the hazardous locations been present, it is more likely than not that Mr. Grove would have not fallen and suffered serious injuries." I would conclude the expert affidavit sufficed to create a genuine issue of material fact. *See Rieder v. Segal*, 959 N.W.2d 423, 431 (Iowa 2021) (concluding an expert opinion, "as expressed in his affidavit and expert disclosures, created a disputed issue of material fact").

I would reverse the grant of summary judgment and remand for further proceedings.