# IN THE COURT OF APPEALS OF IOWA

———————

No. 25-0765
Filed April 1, 2026

———————

**Raymond Novick,**
Plaintiff–Appellant,

v.

**Hellwig Electric, LLC, Richard Hellwig, Individually, and Phillip Hellwig, Individually,**
Defendants–Appellees.

———————

Appeal from the Iowa District Court for Johnson County,
The Honorable David M. Cox, Judge.

———————

**AFFIRMED**

———————

Jeremy B. Hahn of Roberts & Eddy, P.C., Independence,
attorney for appellant.

Matthew G. Novak of Pickens, Barnes & Abernathy, Cedar Rapids,
attorney for appellees.

———————

Considered without oral argument
by Tabor, C.J., and Badding and Sandy, JJ.
Opinion by Badding, J.

**BADDING, Judge.**

In 2015, Raymond Novick began smelling a "foul odor" in his home. Two years later, he discovered the cause: a broken septic pipe in the ceiling above his lower-level bathroom, with a large black electrical wire stretched across it. Novick sued Hellwig Electric, LLC in 2022, alleging the company's electrical work had caused the pipe to break. The district court granted Hellwig summary judgment, concluding that Novick was "required to provide competent evidence to establish his claims, and he simply has not done so." We agree and affirm the court's ruling.

## I.    Background Facts and Proceedings

Hellwig Electric is run by the father-son team of Richard and Phillip Hellwig.[1] In 2006, Raymond Novick hired Hellwig to perform electrical work on his newly built house. Apparently satisfied with Hellwig's work, Novick hired them again in 2013 to move a "large black wire" from one subpanel to another.

Close to two years after that subpanel work, Novick's home started to smell. He hired contractors to locate the source of the odor, but nothing was discovered, and the smell went away. In 2017, Novick alleged the odor returned with "a much more potent stench that made the house nearly uninhabitable." Novick's friends, Brian Melloy and Timothy Cronquist, helped him tear out the garage ceiling—from the front of the house to the back—and remove fiberglass insulation. Melloy was a retired owner of a technology company, and Cronquist owned a construction company. As Cronquist was "blind feeling" in the ceiling above him, he came across a

---

[1] Novick also brought individual clams against the Hellwigs, but the district court dismissed those claims. Novick does not challenge that ruling on appeal.

broken PVC pipe with an electrical wire "very tight up against" it. Because neither Melloy nor Cronquist was experienced in plumbing or electrical work, their involvement ended after they found the pipe—which was broken in two places. The plumber that Novick hired to repair the piping threw the broken pipe away, although Novick took some pictures of it first.

Based on the position of the electrical wire, Novick believed that Hellwig broke the pipe by pulling the wire during the 2013 subpanel work. Novick sued the company in October 2022, alleging claims for breach of contract, breach of implied warranty of workmanlike construction, negligence, fraudulent misrepresentation, and intentional infliction of emotional distress.

In December 2023, Hellwig designated expert witness Stephen Hamers, a licensed professional engineer, to "offer opinions on the possible causes of a broken PVC pipe." Due to the lack of physical evidence, Hamers could not determine the cause of the pipe failure. But he did not believe there was any chance that pulling an electrical wire would break a pipe. After Hellwig designated his expert, Novick designated himself, Melloy, and Cronquist as non-retained expert witnesses. The identification stated that each of them would testify about their "personal knowledge of the work performed" at Novick's residence and "the work done in an attempt to remedy the situation."

At Melloy and Cronquist's depositions, neither could explain how the pipe broke. Melloy testified that although "[y]ou can break PVC pipe by driving over it or hitting it with a sledgehammer," he had never seen one broken like the one they found in Novick's ceiling. And he had never "heard of anyone breaking PVC pipe by pulling electrical wire." Cronquist similarly testified that while he had experience with pulling electrical wire and knew

how much tension could be created, he couldn't recall ever breaking anything like that and "[c]ertainly not a PVC pipe." He was also unable "to offer any expertise on the amount of force it would take to break a piece of PVC pipe." For his part, Novick was unable to remember where the pipe was broken or how it was oriented in the ceiling.[2] Like Cronquist, Novick had never broken anything other than a wire staple or tie by pulling wire. And he had pulled wire "hundreds of times on jobs" for the technology business that he ran for almost four decades.

Shortly before discovery closed in February 2025, Hellwig moved for summary judgment. The company argued that Novick "does not have an expert witness to offer an opinion as to how a PVC pipe could have been broken by a wire and relies on mere *speculation* the pipe was broken in 2013." In resistance, Novick argued the undisputed facts established that Hellwig was "contacted to perform a service, they admitted to performing the work requested, and the work that was requested required . . . moving a wire resembling exactly that of a wire that was later discovered to be over a broken PVC pipe" in the ceiling. Novick also moved to submit "demonstrative" video evidence of tests that he and Cronquist performed in mid-March to "debunk" Hamers' opinion,[3] along with affidavits from both detailing the tests and their results. Hellwig resisted Novick's motion, arguing the video evidence and affidavits were untimely and inadmissible.

---

[2] Novick testified, "My best guess is it was horizonal, but I can't say for sure." Cronquist, however, thought the pipe was vertical.

[3] According to Cronquist's affidavit, the tests tried to recreate the PVC pipe and wire configuration to show that Novick's causation theory—that Hellwig broke the pipe by pulling the electrical wire downward—was possible.

The district court agreed with Hellwig and denied Novick's motion to submit the evidence because it was "information that was prepared and compiled after the expiration of the discovery deadline." The court then granted Hellwig's summary judgment motion, reasoning:

> Plaintiff relies on the theory that a pulled wire broke a PVC pipe and caused the odor and damage. However, Plaintiff is unable to point to any specific and timely produced evidence on this issue. Plaintiff's theory on this issue is largely based on assumption, and on the performance of untimely experiments that he claims show that the pulled wire caused the damage. Plaintiff is required to provide competent evidence to establish his claims, and he simply has not done so. Plaintiff attempts to offer his own testimony on the issue, but the Court is not persuaded that the question of whether a pulled wire caused the damage is something that can be resolved by the testimony of a layperson, and Plaintiff has not established that he is an expert in this field. The Court believes this is not an issue that is within the common understanding of a juror.

Because Novick failed to offer "any timely expert testimony to support his claims," the court concluded they failed as a matter of law.[4]

Novick appeals, claiming the district court erred in denying his motion to submit the video evidence and granting summary judgment for Hellwig.

## II.    Analysis

"We review summary judgment rulings for correction of legal errors." *McClure v. E.I. du Pont de Nemours & Co.*, 23 N.W.3d 33, 40 (Iowa 2025). The

---

[4] The court also agreed with Hellwig's alternative argument that Novick's claims for breach of implied warranty and intentional infliction of emotional distress were barred by the statute of limitations. Although Hellwig did not extend its statute-of-limitations argument to Novick's other claims, the court found they would also be time-barred. Because we agree with the court on the merits of Novick's claims, we do not reach the statute-of-limitations issue on appeal.

court's grant of summary judgment "is proper if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Id.* When a motion for summary judgment is properly supported, the nonmoving party "may not rest upon the mere allegations or denials in the pleadings." *Gries v. Ames Ecumenical Hous., Inc.*, 944 N.W.2d 626, 627–28 (Iowa 2020) (citation omitted). "Instead, the resisting party must set forth specific material facts, supported by competent evidence, establishing the existence of a genuine issue for trial." *Id.*

Before considering the merits of the district court's summary judgment ruling, we first address its refusal to consider Novick's videos because they "consist[ed] of information that was compiled and produced after the discovery deadline." Novick challenges this refusal on appeal, arguing the tests were "conducted at the discovery deadline" and "highly important" to establishing "that a genuine issue of material fact exists" on his claims. In response, Hellwig contends that Novick "provided no explanation to the district court why the untimely evidence could not have been produced" before discovery closed.

At the outset, we note that both parties frame the issue as a discovery sanction—even though Novick brought the issue to the court's attention through a motion to admit the "experimental evidence" shown in the videos. While Hellwig resisted the motion because the videos were "taken after the discovery deadline," it did not ask the court to impose discovery sanctions on Novick. *Cf.* Iowa R. Civ. P. 1.517(2); *Whitley v. C.R. Pharmacy Serv., Inc.*, 816 N.W.2d 378, 386 (Iowa 2012). We also note that Novick did not ask for a continuance under Iowa Rule of Civil Procedure 1.981(6) to permit "discovery to be had." *Cf. Bitner v. Ottumwa Cmnty. Sch. Dist.*, 549 N.W.2d 295, 301–02 (Iowa 1996) (discussing the procedure for continuance requests

under rule 1.981(6)).  Nor did he seek an extension of the discovery deadline.  *Cf. Dillon v. Ruperto*, No. 09-0600, 2010 WL 2383517, at *2–3 (Iowa Ct. App. June 16, 2010) (reviewing a refusal to extend a discovery deadline for a party resisting summary judgment).  Instead, his motion focused on whether the content of the videos met the admissibility requirements of experimental evidence.  *See, e.g.*, *Palleson v. Jewell Co-op Elevator*, 219 N.W.2d 8, 15–16 (Iowa 1974).

Setting aside these procedural oddities—and following the parties' lead in construing the district court's refusal to consider the videos as a discovery sanction—we find no abuse of discretion.  *See Fenceroy v. Gelita USA, Inc.*, 908 N.W.2d 235, 241 (Iowa 2018) ("Discovery rulings are committed to the sound discretion of the trial court." (cleaned up)).  "The district court has inherent power to maintain and regulate cases proceeding to final disposition within its jurisdiction."  *Lawson v. Kurtzhals*, 792 N.W.2d 251, 258 (Iowa 2010) (cleaned up).  Novick's videos purported to introduce new evidence that could have been developed earlier, and injecting them into the case two months before trial would have been unfair to Hellwig.[5]  *See Whitley*, 816 N.W.2d at 388; *Dillon*, 2010 WL 2383517, at *3 (finding no abuse of discretion in denying further discovery where the "events surrounding the

---

[5] Novick also filed affidavits from himself and Cronquist on the question of causation—even though his discovery responses did not disclose that either of them would opine about that issue.  Although Novick only seems to challenge the exclusion of the video evidence, to the extent his claim also includes the causation opinions in the affidavits, we find no abuse of the court's discretion in not considering that evidence.  *See McGrew v. Otoadese*, 969 N.W.2d 311, 325 (Iowa 2022) (affirming the exclusion of expert testimony on causation when it was not disclosed in discovery).

issues transpired long before the summary judgment hearing and were adequately fleshed out in the filings prior to the hearing").

Even if we agreed with Novick that the court abused its discretion in not considering the videos, it would not be grounds to reverse. In deciding whether a genuine issue of material fact exists, the court may only consider those parts of the summary judgment record that "would be admissible in evidence." Iowa R. Civ. P. 1.981(5); *see also Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 96 (Iowa 2012); *Willis v. City of Des Moines*, 357 N.W.2d 567, 573 (Iowa 1984). Novick never filed the videos he wanted the district court to consider. And he never asked the court to amend or enlarge its ruling so that the videos could be part of our appellate record. We are left with no way to determine whether the videos would have been admissible—nor can we determine whether they would have raised a genuine question of fact on causation. As a result, Novick has failed to show a prejudicial error. *See Hillrichs v. Avco Corp.*, 514 N.W.2d 94, 98 (Iowa 1994) ("[W]e will reverse a judgment for error in excluding evidence only when a substantial right of the party is affected and a proper offer of proof has been made.").

Moving on to the merits of the court's ruling, the basis for its grant of summary judgment was the lack of expert testimony from Novick about how the pipe broke. Novick, however, claims expert testimony was unnecessary. He argues that "common sense" supports his claims given the "physical proximity and tension" of the wire found over the broken pipe. But "[i]t is well established that speculation is not sufficient to generate a genuine issue of fact." *Gries*, 944 N.W.2d at 628. And that is all we have here.

Novick is correct that no expert is needed when "under the evidence and *facts of common knowledge* plaintiff's theory is reasonably probable, not merely possible, and more probable than any other theory based thereon."

8

*Doe v. Cent. Iowa Health Sys.*, 766 N.W.2d 787, 793 (Iowa 2009) (citation omitted). "But on the flipside, when the connection between the defendant's negligence and the plaintiff's harm is outside a layperson's common knowledge and experience, 'the plaintiff needs expert testimony to create a jury question on causation.'" *Intlekofer v. Reitberry Rental Prop., LLC*, No. 18-2086, 2019 WL 3714835, at *3 (Iowa Ct. App. Aug. 7, 2019) (citation omitted).

The district court correctly rejected Novick's argument that "whether a pulled wire caused" the pipe to break is "something that can be resolved" by a layperson. We considered a similar argument in *Intlekofer*, where the plaintiffs tried to rely on "common sense" assumptions about water flow to support their claim that elevation changes on the defendants' properties damaged their building. *Id.* Our court reasoned that "[w]hile it may be within the jury's common knowledge and experience that 'water flows downhill,' whether changes in topography caused water damage to a nearby building is a technical or scientific matter calling for an expert opinion." *Id.* (footnote omitted); *see also Merrigan v. Boattenhamer*, No. 25-0543, 2026 WL 44641, at *6 (Iowa Ct. App. Jan. 7, 2026) (concluding expert testimony was required to establish the causal link between the defendants' conduct, the water intrusion into the property, and the damages being sought"). The same is true here. Whether an electrical wire could break a PVC pipe—and the force necessary for that to occur—is beyond the understanding of a layperson. And "[q]uestions of causation which are beyond the understanding of a layperson require expert testimony." *Vaughn v. Ag Processing, Inc.*, 459 N.W.2d 627, 636 (Iowa 1990).

Recognizing that reality, Hellwig retained licensed professional engineer Stephen Hamers, whose report stated that it was "unlikely that

hand pulling the wire would have created the opportunity to fracture the PVC pipe." When asked at his deposition whether there was "any chance" the wire "is what broke the pipe," Hamers answered: "Well, I don't believe so." Novick points out perceived weaknesses in Hamers' opinion—like his failure to determine what caused the break, visit Novick's home, or perform engineering calculations. But Novick had discarded the pipe and repaired the area where it was removed, leaving Hellwig and its expert no opportunity to examine the physical evidence. More importantly, Novick failed to present any contrary causation opinion. His non-retained designated expert witnesses, Melloy and Cronquist, admitted they had no expertise in plumbing or electrical work. And they acknowledged that they had never heard of a pipe being broken by an electrical wire. Novick admitted to the same in his deposition.

Novick is left with the circumstantial evidence of "the presence of the large black wire over the damaged PVC pipe." That is insufficient to establish causation. *See Brewster v. United States*, 542 N.W.2d 524, 528 (Iowa 1996) ("The mere fact that an accident has occurred, with nothing more, is not evidence." (cleaned up)). While "circumstantial and direct evidence are equally probative," circumstantial evidence "is sufficient to establish a fact only where the evidence has sufficient force to allow a factfinder to draw a legitimate inference from the evidence presented." *Godfrey v. State*, 962 N.W.2d 84, 102 (Iowa 2021) (cleaned up). "An inference is not legitimate if it is based upon speculation or conjecture." *Banwart v. 50th St. Sports, L.L.C.*, 910 N.W.2d 540, 545 (Iowa 2018) (cleaned up).

No evidence supported Novick's speculation that—close to two years before the odor started—Hellwig pulled the electrical wire and broke the pipe. Novick could not even remember how the broken pipe was oriented in

the ceiling or "exactly where [Hellwig] pulled that wire." The Hellwigs could not remember either, although both doubted they would have routed the wire in the way that Novick thought they did. In the end, Novick's speculative and "personal, conclusory beliefs are insufficient as a matter of law to generate a fact question." *Godfrey*, 962 N.W.2d at 102.

We accordingly affirm the district court's grant of summary judgment to Hellwig. *See Kubik v. Burk*, 540 N.W.2d 60, 64 (Iowa Ct. App. 1995) (finding summary judgment appropriate when expert testimony is needed but unavailable).

**AFFIRMED.**